CURTIS (RICHARDSON v.). See Case No. 11,781.

CURTIS (SIZE v.). See Case No. 12,920.

## Case No. 3,505. ·

### CURTIS v. SMITH.

[6 Blatchf. 537;[1] 1 Chi. Leg. News, 417.]

Circuit Court, D. Connecticut. Aug. Term, 1869.

TRUSTS—DIVISIBILITY—ADMINISTRATION—CONTINGENT ESTATE—LIABILITY OF ADMINISTRATOR OF DECEASED TRUSTEE—APPOINTMENT OF GUARDIAN—SUIT IN FOREIGN JURISDICTION.

1. An unexecuted trust, created by a will, for the use and benefit of H., and, in the event of his death, during his minority, for the use and absolute enjoyment of the heirs of N., is a unit, and cannot be separated into distinct trusts, nor can its administration properly be divided.

2. The trustee of such a trust must take the trust property encumbered with the whole trust.

3. It being one of the terms of such trust, that such portion of the estate as may be necessary shall be expended in the education and support of H., a court of equity will not permit H. to be deprived of a proper allowance for maintenance and education, in order to enhance the contingent estate for the benefit of the heirs of N.; nor will it permit the property to be wasted on H., without regard to the contingent rights of the heirs of N.

4. The administrator of a·deceased trustee of such trust is not liable, in this court, to be sued in a suit at law, by the successor of such deceased trustee, to recover the trust fund, but can be called to account.for such fund only in a suit in equity.

5. A person who is not appointed trustee under such will, but is only empowered to carry into effect its trust, so far as relates to H., has no right to the custody of the trust fund.

6. In an action at law, this court is governed by the laws in force in Connecticut, when those laws relate to the substantial rights of the parties, and not to mere matters of practice.

7. It is the law of Connecticut, that a guardian must be constituted such by an appointment made in Connecticut, before he can bring an action in a court in Connecticut, to recover property claimed by him as guardian.

8. The statute of Connecticut, passed in 1854 (Gen. St. Conn. 1866, 316, 317), does not confer on a foreign guardian the right to sue in Connecticut, either at law or in equity.

[See Allen v. Philadelphia Sav. Fund Soc., Case No. 234.]

9. Semble, that, where the legal title of a trustee is created by the owner of property, the right of the trustee to enforce it will be recognized every where; but, where such title is derived solely from some act of the law, the effect of that act is confined to the territorial jurisdiction over which the law extends.

10. Whenever a trustee of the latter description seeks to exercise his powers in another state than that under whose laws he was appointed, he must first have his appointment repeated by the local tribunal having jurisdiction over the appointment of trustees.

11. A trustee of the former description, where the trust is created by a will, must, whether he be appointed trustee by the will or otherwise, prove the will in the local jurisdiction where the trust fund is in the hands of a person from whom he seeks to recover it, before he can maintain a suit against such person therefor.

This was an action at law [by Joseph Curtis, trustee, against Haskell G. Smith, administrator, etc., of Cicero Collins, deceased] for an account, tried before the court, without a jury.

Daniel B. Beach, for plaintiff.
Origen S. Seymour, for defendant.

SHIPMAN, District Judge. On the 8th of June, 1860, Alida M. Benson, of Chicago, Illinois, died, leaving a last will and testament, which, among other things not necessary to mention here, contained the following clauses: "My pianoforte and silver I give and bequeath to my nephew, Homer Collins, son of Nelson Collins, and I direct that the care and custody thereof during the minority of said Homer, be given to his father. All the rest and residue of my property, consisting of bonds, promissory notes, and debts due and owing to me, and all securities by way of mortgage or otherwise, given for the payment thereof, I hereby give and bequeath, subject to the payment of my just debts, and the charges and legacies hereinbefore named, to my brother, Nelson Collins, in trust, never-

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.] ·

theless. for the following uses and purposes, that is to say: That my said brother shall collect the same, and invest the proceeds arising from such collections, for the sole use and benefit of my said nephew, Homer Collins, for and during his minority, and, when he shall attain the age of twenty-one years, then that he give said proceeds, with all the increase thereof, to the said Homer absolutely; but, in case the said Homer shall die during his minority, leaving any brother or sister him surviving, then, and in that case, the said proceeds, with all their increase, over and above what shall have been expended for and on account of said Homer, to be held after his decease for the use and benefit of the remaining child or children of the said Nelson, for and during their minority, and to be divided between them, share and share alike, as they shall respectively attain the age of twenty-one years; but, in the event of the decease of the said Homer during his said minority, leaving no brother or sister him surviving, or, in the event of the decease of the remaining child or children of the said Nelson during their minority, then, upon the decease of · the said Homer, in the one case, and the decease of the remaining child or children, in the other case, said proceeds then remaining, with all their increase, to go to such person as said Nelson shall in writing appoint, to be held by such person for the sole use, benefit and enjoyment of said Nelson for and during his life, and to be used, managed, controlled and disposed of in such way or manner as he, the said Nelson, shall direct, and, in the event that any portion thereof shall remain at the time of his decease, the portion then remaining to go to such person or persons, use or uses, as he, the said Nelson, shall, in and by his last will and testament, appoint, and, in default of such appointment, then to the heirs of said Nelson." The testatrix appointed Seth Wadhams to be her executor. The will was duly probated in the county court for the county of Cook, Illinois, and the estate of the deceased was there settled. Nelson Collins, to whom the above bequest was made in trust, died, at sea, on the 18th of January, 1861, his wife, the mother of Homer, having died previously. The domicil of Homer Collins, the cestui que trust named in the will, has always been and now is in the state of New York. On the 23d of April, 1861, Cicero Collins, then of the city of New York, was, by the supreme court of that state, appointed "trustee, in place of Nelson Collins, deceased, and directed and fully empowered to execute the trust in and by said will directed in favor of said Homer Collins." Homer Collins was then, and is still, an infant, under the age of twenty-one years. Cicero Collins accepted the appointment of trustee, and, on the 22d of May, 1861, duly filed his bond for the faithful performance of the trust. On the 5th of October, 1861. he received from Wadhams, the executor of the will, the property bequeathed in the clauses. of the will above cited, and gave his receipt therefor. He subsequently converted the same into money, amounting to several thousand dollars, and held the avails thereof in his hands at the time of his death, which. took place at Litchfield, Connecticut, which place was then his domicil, in 1866. The court of probate for the district of Litchfield, having jurisdiction of the settlement of the estate of Cicero Collins, appointed Haskell G. Smith, the defendant, administrator thereon, which trust he accepted, and gave bonds for its performance. Nelson Collins left no children other than Homer, the one named in the will, and left no will. On the 24th of February, 1868, the supreme court of the state of New York, at a special term held at Rochester, the domicil of Homer Collins, appointed the plaintiff "trustee under the will of the said Alida M. Benson. to execute and carry into effect the same, so far as it relates to the infant Homer Collins." The trustee accepted the appointment, and gave bonds. He has now instituted the present suit against the defendant, as administrator of Cicero Collins, the former trustee. It is an action at law, for an account. and the declaration alleges, that Cicero Collins, in his lifetime, as bailiff and receiver of the minor Homer Collins, received from Wadhams, the executor of Alida M. Benson, eight thousand dollars, and from other sources two thousand dollars. It is conceded, that whatever property or funds Cicero Collins received, came, in some form, from the estate of Alida M. Benson, and under her will. as above cited.

The defendant has pleaded the general issue, and also set up several specific grounds of defence: (1) That the supreme court of New York had no jurisdiction to appoint the plaintiff trustee, as set forth in the declaration; (2) that, whatever appointment the plaintiff in fact received from the supreme court of New York, that appointment conferred upon him no power to act within the limits of the state of Connecticut, or bring this suit in this court; (3) that, whatever may have been the relations existing between Cicero Collins and the minor, the former was never trustee of the estate of the latter, nor bailiff or receiver of any part of his estate, or liable to be sued in an action of account; (4) that the defendant, as administrator of Cicero Collins, deceased, is not liable to be sued in an action of account by the minor, or any one in his behalf. These four points are set up by notice, under the general issue, according to the modern practice of the state courts in Connecticut, and, as no objections have been raised to this form of presenting the questions in this court, all such objections are deemed to·have been waived by the plaintiff, and the court, for the purposes of this case, takes the questions as if more formally pleaded.

The will, after the bequest of the pianoforte and silver to Homer Collins, already cit-

ed, makes certain other devises and bequests, which need not be noticed in this case. Then follows the residuary clause, above cited, giving to Nelson Collins the property in question, in trust for the uses set forth. Both Nelson Collins and his wife, the parents of Homer Collins, being dead, leaving no issue except Homer, the scope of the trust created by the will is narrowed. In case of Homer's death before attaining his majority, a contingency provided for in the will, he can leave no brother or sister. Nelson being dead, the contingency upon which he was to appoint a trustee to hold the property for his use and benefit, can never occur. He left no will making any appointment touching the trust property. Whether he had the power to make such an appointment by will, previous to the death of Homer, need not be determined. All the provisions of the trust have, therefore, fallen, except those which relate to the interests of Homer Collins and of the heirs of Nelson Collins. The trust, then, created by the will, as it now stands, is, first, for the benefit of Homer, and, second, in the event of his death, before his majority, for the benefit of the heirs of Nelson Collins. It is quite possible that the heirs of Nelson Collins, and those of Homer, may be identical; but it is not necessary to decide this question. If they be identical, that fact has no importance in relation to this property, for, upon the death of Homer, during his minority, the property must go, under the will, "to the heirs of said Nelson." The fact, if it be so, that the heirs of Nelson and Homer are identical, would make no difference. If they take by the happening of the contingency upon which their right is suspended, they take as a description of persons under the will, and not by descent from either Nelson or Homer. This is, therefore, an unexecuted trust, for the use and benefit of Homer Collins, and, in the event of his death, during his minority, for the use and absolute enjoyment of the "heirs of Nelson Collins." Such a trust is a unit, and cannot be separated into distinct and several trusts, nor can its administration properly be divided. The trustee, when properly appointed, must take the property encumbered with the whole trust, and be held accountable to the heirs of Nelson Collins, as well as to the primary cestui que trust, Homer. The trust continues till the latter arrives at the age of twenty-one years, if he shall live so long, when it must terminate by the payment of the estate over to him. If he should die during his minority, then the trust must terminate at his death, by the payment of the same over to the heirs of Nelson.

From the language of the will creating the trust, it is evident that the testatrix intended that such portion of the income (and perhaps such portion of the principal) as might be necessary, should be expended in the education and support of Homer. For an equitable administration of the trust in this particu-

lar, the trustee would be accountable both to the minor and to the heirs of Nelson, and his expenditures therein would be under the control of the proper tribunal, on the application of either of these parties. A court of chancery would not permit Homer to be deprived of a proper allowance for maintenance and education, by the niggardly parsimony of a trustee, in order to enhance the contingent estate for the possible benefit of the heirs of Nelson. On the other hand, it would not permit the property to be improperly lavished on the primary cestui que trust, without regard to the contingent rights of those heirs.

This being, then, an indivisible, open and unexecuted trust, the question arises, whether the administrator of the deceased trustee is liable to a suit at law for the trust fund. The question can be easily answered. The authorities are uniform and decisive on the point. In Barings v. Willing [Case No. 985], Mr. Justice Washington remarks: "Courts of equity have always claimed and exercised exclusive jurisdiction in cases of trusts, and over the conduct of those appointed to execute them. This has never been disputed ground. No other tribunal can so properly direct the manner of executing them, or inquire into and correct abuses, where there has been, or is likely to be, mismanagement by the trustees. No other court can so conveniently provide against those unforeseen casualties which may defeat the will of the party who created the trust. It would be a reproach upon the administration of justice, if a court of equity did not possess these powers, since it must be admitted, on all hands, that they cannot be exercised by the courts of common law." See, also, 2 Swift, Dig. 117; 2 Story. Eq. Jur. § 1058; Adams, Eq. pp. 26, 27. This is the general doctrine and has been uniformly adhered to. As is remarked by Nelson, C. J., in Dias v. Brunell, 24 Wend. 9, 13: "It cannot be necessary for courts of law, at this day, to repudiate any such jurisdiction; they never possessed it, and are sufficiently burthened with their own legitimate duties, if no other considerations influenced them, not to desire a most inconvenient enlargement, by usurping the peculiar province of another forum. 5 Ves. 581; Willis, Trusts, 7, 8, note k, and 16; Lewellin, Trusts, 20; 2 Hall, 130."

Had the present suit been brought against Cicero Collins during his lifetime, he could, beyond all doubt, have effectually interposed this objection to the jurisdiction of this court, as a court of law. He was liable to be called to account only in a court of equity. Now, I apprehend that the administrator of the deceased trustee stands, in this particular, in the same position as his intestate stood. He took the estate, not as administrator, but as trustee for the time being. Tiff. & B. Trusts, 325, 326. The fund does not belong to the estate of the deceased, and is not assets in the hands of his administrator. It is not to be applied for the benefit of the creditors or

distributees of Cicero Collins' estate, but is to be held, protected and disposed of in accordance with the directions in the will. Dias v. Brunell, 24 Wend. 9, 13.

It must be remarked, that there is no claim or evidence of any express promise by Cicero Collins, or by his administrator, to pay over any portion of this trust fund, and, if there had been, it may well be doubted, whether a court of law would be justified in holding such a promise a sufficient foundation for an action at law. Such a proceeding against a trustee is only allowable where he has some distinct, separate and ascertained balance in his hands, to which some particular party is entitled, and which the trustee has expressly promised to pay. In such a case, a suit at law will lie against the trustee individually. Dias v. Brunell, 24 Wend. 9, 13.

. But there is another very serious difficulty in this case—one which exemplifies the mischief and impracticability of attempting to deal with such a trust as this in a court of law. As I have already shown, this is an indivisible trust, created by will, and, though now narrowed in its scope, by the death of an intermediate party, it is a trust to be held and executed for the benefit of Homer Collins, in such a manner as to protect the contingent rights of the heirs of Nelson Collins. Now, the plaintiff in this case was not appointed to execute this trust. His appointment purports to authorize him only to "execute and carry into effect the same, so far as it relates to the infant Homer Collins." Surely, it requires neither argument nor authority to prove, that the trust created by this will cannot be parcelled out in this way, and the whole fund be vested, by a judgment at law, in a person who at most is authorized to act only in behalf of one branch of the trust and of one of the parties thereto. Even a court of equity would not be justified in directing this fund to be delivered to a trustee clothed only with these limited powers, and subject only to such limited responsibilities.

It follows, from these views, that this trust fund cannot be recovered in this action at law. (1) The defendant, as representing the deceased trustee, is liable to account only in equity. The administration of the fund by the deceased should pass under the review of a court of equity, where his account can be properly settled and stated, so that, if there has been any diminution of the fund through his mal-administration, it can be clearly ascertained; and the trust estate be put in the way of being reimbursed out of the sureties of the deceased trustee, or out of the assets in the hands of his administrator. (2) The action at law must fail, because the appointment of the plaintiff is not that of trustee under the will, empowered to execute the trust therein created, but only to carry into effect the same, so far as it relates to the infant, Homer Collins. Such an appointment alone confers no right to the custody of this trust fund.

It has not escaped my attention that the pianoforte and silver, given by the will, are no part of the trust property. If they have been sold, the avails form no part of the trust funds. They were specifically given by the will to Homer. His father was merely to have the care and custody of the articles during the minority of his son. The latter took them by an indefeasible title, and, at his death, they go to his heirs, and are in no way embraced in this trust into which the residuary estate was thrown. As the father, to whose care and custody they were committed by the will, during the minority of the legatee, is dead, their custody now belongs to his guardian. But the plaintiff does not sue in this case, at least in form, as his guardian. If, however, his appointment by the supreme court of New York could be construed as clothing him with the rights, powers and character of guardian, he could not be permitted to maintain this action, even for the avails of this pianoforte and silver, for the obvious reason that he has not taken out letters of guardianship in this state.

· In actions at law, this court is governed by the laws in force in this state, when those laws relate to the substantial rights of the parties, and not to mere matters of practice. Now, it is the settled law of this state, as well as of all, or nearly all, other states and countries, that foreign guardians cannot maintain suits beyond the territory in which they were appointed. Mr. Justice Story, in his Conflict of Laws (section 504a), remarks, after having stated the rule in regard to immovable property: "The same rule is applied, by the common law, to movable property, and has been fully recognized both in England and in America. No foreign guardian can, virtute officii, exercise any rights, or powers, or functions over the movable property of his ward, which is situated in a different state or country from that in which he has obtained his letter of guardianship. But he must obtain new letters of guardianship from the local tribunals authorized to grant the same, before he can exercise any rights, powers, or functions over the same. Few decisions upon the point are to be found in the English or American authorities, probably because the principle has always been taken to be unquestionable, founded upon the close analogy of the case of foreign executors and administrators." In a learned note to Andrews v. Herriot, 4 Cow. 529, the reporter says: "But persons coming en autre droit, under the appointment of foreign laws, cannot be parties. To entitle them to be received as such, they must have their appointments repeated under our laws." The precise point was directly decided by Chancellor Kent, in Morrell v. Dickey, 1 Johns. Ch. 153. He held, in that case, that a mother duly appointed by the orphans' court in Philadelphia was not entitled to receive a

legacy due to her infant son, from an administrator in New York. The chancellor remarked: "It is only in her character of guardian duly appointed here, upon requisite security, that she can entitle herself to receive the legacy of her son." As intimated by Mr. Justice Story, this doctrine has undoubtedly been regarded as resting upon the same principle as that which holds foreign executors and administrators under a disability to sue until they have received authority from the local tribunals authorized to grant the same. This was evidently the view of Chancellor Kent, in Morrell v. Dickey, and of Judge Cowen, in his note to Andrews v. Herriot; for, the cases they cite in support of the position they take, are all, or nearly all, those which relate to the rights and powers of foreign executors and administrators. The doctrine, so far as it relates to executors and administrators, has repeatedly received the sanction of the supreme court of errors of Connecticut, and once, at least, of the circuit court of the United States for this district. Hobart v. Connecticut Turnpike Co., 15 Conn. 147; Riley v. Riley, 3 Day, 74; Champlin v. Tilley, Id. 303.

This rule of law, touching the disability of foreign guardians, executors, &c., which has prevailed in Connecticut in common with other states, has never been abrogated. It has, however, been slightly modified by statute, but not to the extent of conferring the right to sue, either at law or in equity. By an act passed in 1854 (Gen. St. Conn. 1866, pp. 316, 317), it was provided as follows:

"Sec. 87. Whenever any executor, administrator, guardian or trustee, shall hold in his hands the personal estate belonging to any heir, legatee, or ward, under the age of twenty-one years, who is an inhabitant of another of the United States, and residing therein, such personal estate may be transferred and delivered to the legal guardian or trustee of such minor, appointed under the authority of the state where such minor resides, and having, by the laws of the state where appointed, power and authority to control the property of his ward.

"Sec. 88. Whenever such guardian or trustee shall be desirous to receive such property, he may file his application in the probate court where the will was proved, administration granted, or the appointment of the guardian or trustee in this state was made, stating the facts by reason of which he claims said property, and asking said court to direct that said property shall be delivered to him; and, upon his depositing in said court a copy of the record of his appointment under the authority of the state in which his appointment was made, certified conformably to the acts of congress relating to the certification of judicial proceedings between the states, and furnishing satisfactory evidence that such guardians and trustees have power, by the laws of the state where he was appointed, to control the estate of their wards, such court of probate may, in its discretion, direct such estate to be transferred to such guardian or trustee.

"Sec. 89. The executor, administrator, guardian, or trustee, shall transfer the personal estate of such heir, legatee or ward, to said guardian or trustee, according to the directions of said court, and take his receipt for the same, and shall make return of his doings under oath, which, with said receipt, shall be recorded in the records of said court, and said executor, administrator, guardian, or trustee, shall thereupon be discharged from all future liability for the property so transferred.

"Sec. 90. The courts of probate may direct guardians of minors residing in another state to pay over all, or a part, of the annual income of such minor's property, to be applied to the nurture or education of such minor, in the state where he or she resides."

These sections of the Connecticut statutes are of comparatively recent enactment, and were obviously made in view of the disability of foreign executors, administrators, trustees, and guardians to maintain suits in this state without first having their appointments repeated here. They were intended to partially obviate the difficulty arising from this disability, by permitting a resort to the discretionary power conferred upon the courts of probate in behalf of foreign minors entitled to property. No doubt, the primary object of the statute was to deal with those cases where legatees, distributees and wards under age, derive their right to property from estates of persons deceased here, in the place of their domicil, and where administration of their estates must be had. But the language of the act is broad enough to include property in the hands of a guardian or trustee and belonging to foreign minors, from whatever source derived. But the whole power in the premises is confided to the discretion of the courts of probate, to be exercised, if at all, in conformity with the provisions of the act. Beyond this, the disability to maintain legal proceedings to recover the property still remains. Therefore, the plaintiff cannot, even if he is to be deemed clothed with the rights and powers of guardian of Homer Collins, recover in this action the avails of the piano and silver.

I have already shown, that the trust fund, the fruit of the residuary clause in the will, cannot be recovered in this action. Nor can it be recovered in equity by the plaintiff, unless he shall first be appointed, by the proper tribunal, trustee under the will, and be clothed with the power and responsibility of administering the whole trust. This trust cannot be split up and confided to different hands, nor can the whole fund be committed to a trustee who is empowered to act only for one of the cestui que trusts, leaving the rights of others in abeyance, and to an uncertain fate. It follows, from these views, that judgment in this suit must be rendered

for the defendant. If this were an ordinary case, I should not feel called upon to extend this discussion further; but there are several very interesting questions which naturally arise out of the facts, upon which I shall venture to make some suggestions.

It is alleged in the pleadings, and was insisted on in the argument, that the trustee in this case, appointed by the court in New York, whatever might be the powers conferred upon him by such appointment in his own state, cannot, virtute officii, maintain a suit beyond the jurisdiction of that state. No direct authority on this point was cited at bar, and, after a somewhat extensive and diligent search, I have been unable to find any case in which such a question is discussed in relation to foreign trustees. . But I apprehend, that, where the legal title of the trustee is created by the owner of the property, it would be respected, and the right of the trustee to enforce it be recognized everywhere. It would not be deemed material that the legal title was encumbered with a trust. The jus disponendi would be acknowledged and effect given to it, though, of course, any requirement of the local law as to formalities must be observed. Thus, if the title of the trustee is created by will, the will must be proved in the state where the suit is brought, according to the local law, to give effect to any title under it. So, if the legal title be by deed, the deed must be proved according to the local law. In this regard, the legal title of a trustee does not differ from any other legal title, and he can everywhere enforce that title by legal proceedings, the same as any other owner. But, if the title is not derived from the jus disponendi of the owner, but solely from some act of the law, the effect of that act is confined to the territorial jurisdiction over which the law extends. This is the principle which has governed the cases of executors, administrators, and guardians, and 1 see no reason why it should not prevail in regard to trustees appointed by local law. As the trustee, in such a case, derives his title, not from the jus disponendi of the owner, but from the law of the state under which he is appointed, this title, as well as the right to enforce it by legal remedies, must cease to operate when he enters a foreign jurisdiction. Whenever he seeks to exercise his powers in another state than that under whose laws he was appointed, he must first have his appointment repeated by the local tribunal having jurisdiction over the appointment of trustees.

Now. as already intimated, had the present plaintiff been named in the will as trustee, he would have received the title to this estate from the jus disponendi of the owner, and this title would have enabled him to sue in this state, on compliance with the formalities required by its laws. These formalities are, the probate of the will in this state, and a bond for the due performance of the duty imposed by the will, so far as the

property in this state is concerned. But the plaintiff received his appointment from the supreme court of New York. Still, the character of the title he took, (assuming now that the latter court had jurisdiction, and that the appointment was that of a full trustee,) and the character of the trust with which it is encumbered, depend wholly on the will by which the trust was created. No court, either of law or equity, could properly proceed a step in aid of the trustee, until the will had been produced and probated here. Judge Redfield, in his treatise on the Law of Wills (volume 1, p. 401), remarks: "In those American states where the probate of wills is conclusive, both of real and personal estate, the courts of equity will not assume jurisdiction to compel the performance of a trust arising under a will proved in another state, but of which there has been no probate, or its equivalent, by filing a copy of the original probate in the state where the trust is claimed to be enforced, and into which state the funds belonging to the estate have been removed by the personal representatives. Such probate and administration is entirely local, and the personal representative appointed in one state, or his authority, cannot be recognized in any other state." This doctrine is supported by the cases of Campbell v. Sheldon, 13 Pick. 8, and Campbell v. Wallace, 10 Gray, 102, and, although reference is made in them to the statute of Massachusetts. the general principle is not dependent upon those statutes.

It would seem, then, that a trustee under this will, whether named in the will, or appointed by the tribunal to which jurisdiction belongs, must, before he can maintain a suit in this state, prove the will in that probate district where the fund is in the hands of the defendant. Undoubtedly, the judge of the probate court would be authorized to accept, as proof of the due execution and validity of the will, an exemplified copy of the same, with the foreign probate thereof in Illinois, the domicil of the testator. Indeed, the production of the will, with the proceedings and decree of the foreign court admitting the same to probate, would seem to exclude all other proof, and to require that auxiliary probate here should follow as of course. Enohin v. Wylie, 10 H. L. Cas. 1.

It is hardly necessary to add, that the statutes of Connecticut authorize the probate of foreign wills in this state. This will has not been probated in Connecticut, nor is there any proof before this court that it has ever been probated in New York. An exemplified copy of the probate in Illinois is produced, but this would not aid this court, as it has no probate jurisdiction, and no means whatever to give effect to the will in this state. That must be done by the probate tribunals of the state. I do not overlook the fact, that this fund has been brought into this state since the settlement of the estate; but that is not material. The fund is here, and it is encumbered with a

trust. The fund and the trust are derived from the will, and the trustee must claim under that instrument, in addition to the authority conferred upon him by his appointment by the supreme court of New York. He must, therefore, probate the will in this state, before he can enforce the title under this trust here. He must also be appointed in proper form, and by the proper tribunals, both in New York and in this state. The proper form undoubtedly is an appointment as trustee under the will, to execute the entire trust, with a bond holding him responsible for the interest of all persons who have any rights, contingent or otherwise, under the will.

Which is the proper tribunal to make the primary appointment of the trustee, is not so clear. The trust was created by a will executed at the domicil of the testatrix, in Illinois, where her death took place, her will was probated, and her estate settled. But neither the fund, nor the primary cestui que trust, nor any other party interested in the same, resides in that state. The primary cestui que trust, Homer Collins, has his domicil in New York. But there is no fund there, nor, so far as it appears in the proof, has this will ever been probated there. Of course, that omission could be easily supplied, if need be, before other proceedings are instituted. The will being proved and made effective in New York, where the primary cestui que trust resides with his grandparents, his natural guardians and protectors, it would seem to pertain to that jurisdiction to appoint the trustee, and supervise the administration of the trust. Certainly, the trust could be more intelligently and economically administered by a trustee residing in the vicinity of the ward. It was undoubtedly the expectation of the testatrix that the fund would be held in New York, as the trustee whom she appointed resided there, as well as the cestui que trust. The fund, which is now temporarily in the hands of the defendant, should be returned to the domicil of Homer Collins. The only object I have had in view, in touching upon this point, has been to suggest the question as to which jurisdiction should primarily appoint the trustee. As I have already stated, inasmuch as the trustee is to obtain the fund from one jurisdiction, and hold and execute the trust in another, he must receive an appointment from both. It may, after all, not be important which court first appoints him. The only material point is, that he should be first appointed and qualified in New York, before any court sitting in Connecticut could properly direct the fund to be passed over to him. If it should be contended that Illinois, the domicil of the testatrix by whose will this trust was created, is the proper jurisdiction to appoint a successor, it may be replied, that both the beneficiaries and the fund are situated elsewhere. There is nothing but the will, and its original probate in that state, upon which its jurisdiction can

act; and, as the fund was received by the deceased trustee under an appointment by the court in New York, and was brought into that state by him, and from there into this state, perhaps his administrator would be estopped from denying the authority of that court to appoint his successor. At all events, after a proper appointment there, the plaintiff can prove the will here, have his appointment repeated here, and then apply to the court of probate, under the statute of Connecticut already cited, or apply directly to this court.

It is no more than just to the defendant to say, that he admits that his intestate received the property in question from Wadhams, the executor of the will, as trustee, and brought into this state the avails, which are now in the defendant's hands; and that, as administrator, he is ready and anxious to pay over whatever has come into his hands, after the account of his intestate, as trustee, shall have been properly adjusted. His only solicitude is to pay to the person properly authorized to receive, and in accordance with the law.

---

CURTIS (UNITED STATES v.). See Cases Nos. 14,904 and 14,905.

CURTIS (WIGHT v.). See Case No. 17,628.

CURTIS (WOODWORTH v.). See Cases Nos. 18,012 and 18,013.

CURTIS (WRIGHT v.). See Case No. 18,075.

CURTIS (YATES v.). See Case No. 18,127.

---

## Case No. 3,506.

CURTISS v. GEORGETOWN & A. TURNPIKE CO.

[2 Cranch, C. C. 81.] [1]

Circuit Court, District of Columbia. Nov. Term. 1813.

GENERAL ISSUE IN ACTION OF DEBT—EVIDENCE OF FRAUD OR IRREGULARITY.

In an action of debt founded upon an injunction taken under the charter of the Georgetown & Alexandria Turnpike Company, of the 3d of March, 1809, the defendant, upon the plea of nil debet, may give evidence of fraud, or partiality, or irregularity on the part of the jurors who took the inquest. But the jurors themselves cannot be examined as witnesses of each other's conduct. It is necessary that all the jurors sworn should agree to the inquest.

Debt for $3,000, the damages assessed by an inquisition taken under the act of congress of the 3d of March, 1809 (2 Stat. 539), incorporating "The President, Directors, and Company of the Georgetown and Alexandria Turnpike Road." This inquisition had been quashed by the circuit court, but their decision was reversed by the supreme court of the United States, because the circuit court had no jurisdiction of that matter.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]