HENRY C. MUHLKE *et al.*

v.

LOUISA TIEDEMANN *et al.*

*Opinion filed February 17, 1899.*

1. WILLS—*when fee will pass by implication.* A devise of a fee by implication must prevail in construing a will, even though technical words are not used, if such implication is not overcome by other parts of the instrument.

2. SAME—*will construed as passing a fee.* A devise to the testator's wife "to have, lease, dispose of and convey at her own will and discretion," subject only to the restriction that she shall not convey or mortgage without the written consent of named persons, passes an absolute fee to the wife, and not a life estate with limited power of disposal.

3. SAME—*when restriction against alienation has no legal force.* A restriction that the devisee shall not convey or mortgage without the written consent of named persons has no legal force when attached to a devise to the testator's wife "to have, lease, dispose of and convey at her own will and discretion," subject only to such restriction.

APPEAL from the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

John H. Muhlke died testate in 1879, leaving a last will and testament, which is in the words and figures following:

"I, John H. Muhlke, of Chicago, State of Illinois, being of sound and disposing mind and memory, do make and publish this my last will and testament:

"*First*—I direct that all my just debts be paid.

"*Second*—All of the property, real and personal, of which I may die seized or possessed, and wherever situated, I give, devise and bequeath unto my beloved wife, Catharina Muhlke, to have, use, lease, dispose of and convey at her own will and discretion, subject only to this restriction and prohibition: that she shall not mortgage or convey the same, or any part thereof, without the written consent of John K. Harmon and Charles G. Muhlke, during their joint lives or of the survivor of them during his life.

"*Third*—I hereby nominate and appoint my said wife sole executrix of this my last will and testament, and request that she be not required to give bond or security for the performance of her duties as such executrix.

"In witness whereof I have hereunto set my hand and seal this 29th day of April, A. D. 1879.

JOHN HENRY MUHLKE.    [Seal.]

"The foregoing will was signed by the above named testator in our presence, and at his request witnessed by us in his presence and in the presence of each other.

GEORGE ATZEL,<br>LOUIS HEES,<br>GEORGE APFEL."

Catharina Muhlke, widow of the said John H. Muhlke, died testate in 1895, leaving a last will and testament, which is in the words and figures following:

"I, Catharina Muhlke, of the city of Chicago, being of sound mind and memory, do hereby make and declare this to be my last will and testament:

"*First*—I give and bequeath to the Uhlich Evangelical Lutheran Orphan Asylum of Chicago the sum of five thousand dollars ($5000).

"*Second*—I give and bequeath to Jacob H. Tiedemann, as a recognition of the able and faithful manner in which he has for many years managed my property, the sum of ten thousand dollars ($10,000).

"*Third*—Subject to the payment of said legacies and my just debts and funeral expenses, I give, devise and bequeath all my estate, real, personal and mixed, to Jacob H. Tiedemann, John K. Harmon and Joseph H. Muhlke, in trust, for the following uses and purposes:

"(*a*) They shall take possession of said estate and manage the same; shall collect all rents, profits, dividends, interest and other income arising from the same; they shall make all necessary repairs, and pay taxes, assessments and insurance premiums; they shall have the power, in their discretion, to improve any portion of my unimproved real estate by the erection of buildings thereon, and to add to or alter the improvements on such of my real estate as is already improved, or to replace improvements that may be destroyed by fire or otherwise, and for the purposes above mentioned said trustees may use the income of my estate or a part of the principal of the same. They shall have full power to invest or re-invest all moneys that may from time to time belong to my estate, whether arising from the income or the sale of any part of the real or personal property belonging to the same, such investments to be in good interest-bearing securities, giving the preference to first mortgages on real estate, United States government, State, municipal or good local bonds; and further, my said trustees shall have full power to sell and dispose of my personal property, to collect or sell my securities, and to give all proper receipts and releases therefor, and shall have full power, also, to sell and convey any or all of my real estate for cash or on deferred payments, as they may deem best,

and to give the necessary deeds of conveyance therefor; and also to lease all or any part of my real estate on ordinary short-term leases, or on longer terms, commonly called 'ninety-nine year' leases. It is my intention to vest in my trustees the absolute management of my estate, and to give them full powers for that purpose, whether hereinbefore specifically set forth or not, with a view to its preservation, increase and ultimate distribution, as hereinafter set forth.

"(*b*) My trustees shall annually make out a true statement of the income and expenditures of my estate, and shall furnish the beneficiaries with a copy of the same. They shall divide the net income annually into four (4) parts; one part thereof, or one-quarter, shall remain as part of my general estate, to be re-invested, and three parts thereof, or three-quarters, they shall divide equally between my children. In case of the death of any of my children leaving issue and a husband or wife him or her surviving, then one-third of such child's share of the income shall go to such husband or wife so long as he or she remains unmarried and the balance to the issue, and upon the death or marriage of such husband or wife the whole of the respective share to the issue. Should such deceased child leave a husband or wife but no issue, then in like manner one-third of its share of the income shall go to the husband or wife during life, or so long as he or she remains unmarried, and the balance shall remain a part of my estate.

"(*c*) At the end of twenty (20) years from the date of my death my entire estate shall be partitioned, distributed and divided in equal shares between my children then living and the issue of such of my children as may then be dead, such issue to take such share as the parent would have taken if living. Should there then be living a husband or wife of a deceased child entitled to a part of the income of my estate, as above set forth, his or her share of such income shall be capitalized according to

177—39

the mortuary tables, and such capital sum paid to him or her in lieu of such annuity.

"(*d*) Should it appear at the time when my estate is to be distributed and divided that any of my children shall be without issue, either children or grandchildren, then the share of my estate to which said child shall be entitled shall not be paid to it, but my said trustees shall continue to hold said share in trust for said child, and to manage it, paying to it the net income of the same, and shall have all the powers hereinbefore granted to them for the management of my entire estate, and upon the death of said child its said share shall be distributed among my other children and the issue of any deceased child, on the principles hereinbefore stated, the surviving wife or husband, if any, to be treated the same as the wife or husband of any child dying before the distribution of my estate, as hereinbefore set forth. Should such child have lawful issue after the distribution of my estate, then its distributive share of my estate shall be conveyed, delivered and paid over to him or her, and the trust in this paragraph created shall terminate.

"(*e*) I direct that the income so to be paid annually to the beneficiaries under this will, as well as their distributive share of my estate when the same is divided and distributed, as aforesaid, shall be paid, distributed, assigned and conveyed to each of said beneficiaries in person, or to their lawful appointed guardian or other legal representative, and that in no event shall any or either of said beneficiaries have the right or power to anticipate his or her share of said estate, or its income, by any order on said trustees, assignment, conveyance or other voluntary transfer, or by operation of law, by virtue of any attachment, judgment, decree or other legal proceedings against such beneficiaries.

"*Fourth*—I hereby direct that of the three trustees above named Jacob H. Tiedemann shall be the managing trustee, and as such shall attend to the keeping of the

books and the usual office work, and shall receive a compensation of $2500 per annum, the other trustees not to receive any compensation for their services. In case of the resignation, death, inability or refusal to act of any of said trustees, the remaining two trustees shall choose a third trustee, and shall also choose from their number a managing trustee, if the vacancy so to be filled be that of managing trustee. Said remaining trustees shall file in the office of the recorder of deeds of Cook county, Illinois, a certificate of the appointment by them of a third trustee, which certificate shall be under their hands and seals and shall be evidence of such appointment.

"*Fifth*—I nominate and direct, also, that said Jacob H. Tiedemann, John K. Harmon and Joseph H. Muhlke be appointed the executors of this my last will and testament, and that they be not required to give bond as such, and I hereby revoke all former wills by me made.

"In witness whereof I have hereunto set my hand and seal this 14th day of January, A. D. 1895.

CATHARINA MUHLKE.     [Seal.]"

(Certificate of witnesses, etc.)

Each of these wills was duly admitted to probate in the probate court of Cook county, and each of said testators left surviving the same eight children as their respective heirs-at-law. Thereafter a bill for partition was filed in the superior court of Cook county by three of the heirs-at-law of said John H. Muhlke against the other heirs-at-law of said John H. Muhlke, (all eight of said heirs being also devisees under the will of their mother, Catharina Muhlke,) and also against the husbands and wives and children of such heirs and devisees, and against the trustees under the will of said Catharina Muhlke. The complainants in the bill, appellants here, claimed that the estate devised by their father to their mother was simply a life estate, with a power, under certain conditions and limitations, to mortgage or convey the fee, and that the fee in remainder descended to the heirs-at-

law of said John H. Muhlke, and that their mother had no estate which she could devise, and that her only right to dispose of the fee was by virtue of the power conferred upon her and not by virtue of any estate vested in her, and that she did not devise the fee under such power, but if she did, the devise is void because it violates the rule against perpetuities. A demurrer to the bill was sustained, and the bill dismissed for want of equity, and this appeal to this court was then taken by complainants.

PENCE & CARPENTER, for appellants.

SIDNEY SMITH, for appellees.

Per CURIAM: The first question to be determined in this case is, did Catharina Muhlke, widow of John H. Muhlke, deceased, take the absolute title to the property given and devised to her in the second clause of his will, or only a life estate with a restricted power of disposal; and if only the latter, and her will was a mere execution of the power so far as it disposed of said property, the second question is, does her will violate the rule against perpetuities and is it therefore void? The complainants in the bill, three of the heirs-at-law of John H. Muhlke, sought to partition the lands as intestate estate, Catharina Muhlke being dead. She died seized and possessed also of real and personal property not derived from the will of her husband and which is not involved in this suit. The trustees named in her will claim to hold the property sought to be divided, in trust for the purposes mentioned in her will.

From the view we take of the case the second question does not arise. The clause of John H. Muhlke's will upon the construction of which must depend the answer to the first question and the decision of the case, is as follows:

"*Second*—All of the property, real and personal, of which I may die seized or possessed, and wherever situated, I give, devise and bequeath unto my beloved wife,

Catharina Muhlke, to have, use, lease, dispose of and convey at her own will and discretion, subject only to this restriction and prohibition: that she shall not mortgage or convey the same, or any part thereof, without the written consent of John K. Harmon and Charles G. Muhlke during their joint lives, or of the survivor of them during his life."

There is not, either in this clause or in any other part of the will, any limitation or devise over, or any intimation that any other person or persons shall thereafter, under any circumstances, have any right or interest whatever, of any kind, in the estate or any part of it. In the construction of a will the primary consideration is the ascertainment of the real intention of the testator, and for the purpose of such ascertainment regard must be had to each and all of its provisions. It may well be that, under the rules of law, force, vitality and effect cannot be given to some of them; but nevertheless, so far as they throw light upon the provisions of the will and thus aid the expounder in ascertaining the testator's intention, they are to be regarded in its interpretation.

It will be noticed that the will gives and devises to said Catharina all of the property, real and personal, of which the testator should die seized or possessed, wherever situated. There can be no doubt that this language, without the restrictive clause, would have been amply sufficient to pass the title to the realty in fee·simple to the devisee, not only under our statute but even at common law. While the technical words "heirs and assigns" were not used, still, the entire right, interest and title of the testator were included in the words employed and would pass under them at common law. (4 Kent's Com. *535; 2 Jarman on Wills, *283; *Lincoln* v. *Lincoln*, 107 Mass. 590.) True, as contended by counsel for appellants, a part of the clause cannot be wrested from its connection with the rest and construed separately, and from that a conclusion reached that a fee was devised and the rest of

the clause be then rejected as repugnant to such fee. The entire clause, and even the rest of the will, if it throws any light on the subject, must be considered and construed together. Still, the comprehensive character of the language used in the first part of the clause cannot be lost sight of in the interpretation of the entire clause. If the devise of the property mentioned had been to Catharina Muhlke "in fee simple," or to her and "her heirs and assigns," "to have, use, lease, dispose of and convey at her own will and discretion, subject only" to the restriction mentioned, there could be no doubt that the fee would have passed and that the attempted restriction upon the right of alienation would not limit the estate. The only difference would seem to be, that in such a case the intention to devise the fee would expressly and necessarily appear by the use of technical words having a definite legal signification, while as the clause was written such intention appears by necessary implication, unless, indeed, it can be said that such implication is controlled and defeated by the same attempted restriction. Without such restrictive clause there could be no more doubt in the one case that the fee would pass than in the other. What force, then, should be given to this restriction of the power of alienation of the fee?—for that is what the qualifying words of the clause mean. Appellants contend that they so control the rest of the clause as to limit the interest devised to a life estate with a qualified power of disposal of the fee. There is, however, no language used by the testator denoting an intention to devise to his wife a life estate only. There is no devise over, and from the language used we cannot presume he intended to die intestate as to the fee. Such a presumption should not be indulged in any case where the will is open to any other reasonable construction. It was doubtless his wish, as expressed in his will, that she would not mortgage or convey the property devised to her without the written consent of the two persons named; but as the will clearly

devises the title in fee, the restriction upon the power of alienation of the owner in fee must be held to be without legal force, as the power of alienation is a necessary incident to absolute ownership. *Friedman* v. *Steiner*, 107 Ill. 125; *Hageman* v. *Hageman*, 129 id. 164; *Steib* v. *Whitehead*, 111 id. 247.

In so holding we do not overlook appellants' contention that there is a distinction between a technical devise of a fee and an indefinite devise in fee by implication, and that in the one case the fee would pass at common law unless a contrary intention appears from the context, while in the other case it would pass even against the expressed intention of the testator, because, by virtue of the rule in *Shelley's case*, the testator having designated the estate devised by technical words, the necessary legal operation of which is to pass the fee, the legal intention which they import cannot otherwise be contradicted. Granting that such technical words were not used in the will in question, and that at common law and without regard to the statute the fee, if devised at all, is devised by implication only, and that such a devise should not be implied unless such implication arises from a consideration of the whole instrument, still, where such implication is not overcome by the qualifying clause, it must prevail in the construction of the will to the same extent as if there were a technical devise in fee, for otherwise the restrictive clause would be given more force than the rest of the will. True, as said by counsel, this court said in *Siddons* v. *Cockrell*, 131 Ill. 653, that "a devise of land without the use of the word 'heirs,' or other words necessary at common law to pass a fee, is only to be construed as a devise of a fee when it does not appear from the entire will that a less estate was intended;" but applying that rule here, as we have in the construction of the clause in question, the result contended for by appellants cannot be reached, and no such result can be reached without resorting to a strained and artificial in-

terpretation and construction. After applying all appropriate recognized rules of construction, the will discloses no intention different from that which plain, common sense would attach to the language used. The testator intended to devise, and did devise, the property to his wife absolutely, but evidently desiring that she should avail herself of the judgment of the persons named, in the mortgaging or sale of the property, undertook to limit her power to convey by making their consent necessary. Whatever moral force such a restriction might have had on the devisee, it could not operate to limit, what would otherwise be an estate in fee simple absolute to a life estate. In nearly all of the cases cited by the appellants there was a limitation over, or other qualification sufficient to rebut the implication that it was intended a fee should pass.

This construction of John H. Muhlke's will disposes also of all questions raised as to the construction of the will of Catharina Muhlke, for it is not contended that her will violates the rule against perpetuities if she was the owner in fee of the lands which she devised in trust by her will, but only that it had that effect if her will disposed of lands which his will merely gave her a power to dispose of, and her will was made in execution of such power, the point being, that if the estate appointed by her will in the execution of the power would have been void as against the rule had it been made by his will, it is void as made by her will. (4 Kent's Com. *338; Gray on Perpetuities, sec. 515.) But as we have held that her will was not the mere execution of a power given to her by her husband's will no further attention need be paid to this branch of the case, it having been cut off by the construction given to the first will.

The decree below dismissing the bill was correct, and it will be affirmed.                *Decree affirmed.*