MARY I. GOLDSMITH, JAMES S. GOLDSMITH, ELIZABETH E. C. WALLER, nee Goldsmith, DUVAL P. GOLDSMITH, REBECCA M. DE B. GOLDSMITH, MILDRED GOLDSMITH, JOHN M. GOLDSMITH, JR., JAMES B. S. GOLDSMITH, PERCY H. GOLDSMITH and ALEXANDER S. M. GOLDSMITH, Plaintiffs, Appellants, v. MAX D. PETERSEN, WILLIAM D. PETERSEN, HENRY F. PETERSEN, JOHANNA FREDERICKE LUETJE, MARIE BUSCH, FREDRICKA W. REPSOLD, AGNES A. CARLSEN, sole Devisees and Legatees under the Will of J. H. C. PETERSEN, Deceased, and MAX D. PETERSEN and THEODORE BUSH, Executors of the said last Will and Testament of J. H. C. PETERSEN, Deceased, ANNA TRUE, D. GOLDSMITH SHANKS, KATHERINE D. FAHER, nee Shanks and MARY E. SHANBRONE, nee Shanks, Defendants, Appellees, and MARY I. GOLDSMITH ET AL V. FREDERICK LUDOLPH, D. GOLDSMITH SHANKS, KATHERINE D. FAHER (nee Shanks) and MARY E. SHANBRONE (nee Shanks) Defendants, Appellees.

Wills: MUNIMENT OF TITLE: NECESSITY FOR PROBATE. A foreign will
1 must be admitted to probate in this state to constitute a muniment of title to real property located here: the mere filing of a certified copy and of the record of its admission in the foreign state is not sufficient for that purpose.

Same: CONSTRUCTION: ESTATE GRANTED: PROVISIONS AGAINST ALIENA-
2 TION. The provision of a will creating a fee in real property is not affected by a subsequent condition against alienation, as such a limitation in connection with a devise in fee is void: Nor will a subsequent power to dispose of the fee by will add anything to the right of alienation. The power to alienate is inherent in the grant of the fee, and a subsequent gift or denial of that power is

invalid, and can have no tendency to reduce the fee to a life estate. The will in question is held to convey an estate in fee and is unaffected by subsequent provisions relative to alienation.

*Appeal from Scott District Court.*—HON. WILLIAM THEOPOLIS, Judge.

SATURDAY, APRIL 12, 1913.

SUIT in partition of certain property resulted in the dismissal of the petition. The plaintiffs appeal.—*Affirmed.*

*Lane & Waterman, Joseph T. Harrison* and *Ralph C. Williamson,* for appellants.

*Walter H. Petersen, Cook & Balluff* and *Bolinger & Block,* for appellees Petersen and others.

*A. C. Mueller, C. A. Rudolph* and *Bollinger & Block,* for appellees Ludolph and others.

LADD, J.—Zachariah H. Goldsmith died in 1854 testate and seised of lot 8 in block 8 in the city of Davenport, and other property. A widow and two children, John M. and Mary Mildred Goldsmith, survived him. His will was admitted to probate, and in 1866, in an action to which all named devisees were made parties, John M. and Mary Mildred Goldsmith, as plaintiffs, procured the entry of a decree so construing the will as that it gave them absolute title to the above-named lot and other property, and in June, 1873, John M. Goldsmith and his wife Mary I., one of the plaintiffs, conveyed an undivided half of said lot to John L. Lancaster, and in March, 1873, said Lancaster and wife and Mary Mildred Goldsmith and husband, Daniel Shanks, conveyed the lot by warranty deed to Peter Fries. The defendants in the first case claim the west half of said lot and the west two inches of the east half thereof through mesne conveyances under Fries, and the defendants

claim the remainder of the lot in the same way. The plaintiffs in each case are the widow and children of John M. Goldsmith, who resided in Virginia and died there in 1903, leaving a will devising to them ''one-half of all the property left to my sister Mary Mildred Goldsmith, and John Mason Goldsmith set forth in my father's will made 2d day of August, 1854, A. D. The property being in the city of Davenport, Scott county, state of Iowa, U. S. of America. It is my wish and desire that my wife have one-third of my interest and the other two-thirds be equally divided between my nine children. My sister Mary Mildred Goldsmith and myself only sold our life interest in the property, as it was the will and desire of my father Z. H. Goldsmith and that under no conditions were we to dispose of his property during our lives in the state of Iowa, city of Davenport.''

Mary Mildred Goldsmith died intestate in 1882, leaving several children, some of whom are still living, though her husband has died since. The claim of plaintiffs is based on the will of Zachariah H. Goldsmith, which, in so far as material, reads: ''I, Zachariah H. Goldsmith, being of sound and disposing mind and memory do make this my last will and testament in manner and form following; that is to say: I give and bequeath to my two children John Mason Goldsmith and Mary Mildred Goldsmith, the following real estate lying and being in the city of Davenport, county of Scott and state of Iowa, to wit: Lot eight (8) in block eight (8), lot three (3) in block forty-six (46), lot ten (10) in block fifty (50), lot two (2) in block forty-two (42) and lot one (1) in block seven (7).'' Clauses 2 and 3 are legacies. ''(4) I give, bequeath and devise to my nephew Zachariah D. Blakistone the house with one-third part of the lot on which the same stands on the corner of Main and Seventh streets to hold to him and his heirs, as a testimonial of my regard and from a sense of gratitude for his kindness to my two children.'' Clauses 5 and 6 are legacies.

(7) I give, bequeath and devise all of the remainder of property whether the same be real, personal or mixed to my two children John M. Goldsmith and Mary Mildred Goldsmith. (8) It is my will, however, and all the foregoing provisions are subject to this one, that my real estate, except the part bequeathed to my nephew Z. D. Blakistone be used only so far as the interests from rent may arise upon the property, but with no power to sell during the lives of my said children. At the same time it is my will and desire and direction that my children have full power to give and bequeath at their death the property above devised to them to any person, to whom they shall think proper. (9) Should either of my children die before attaining the age of twenty-one years or without having lawful issue, and without will, then the survivor shall have the entire benefit of my estate. Should both of my children die before attaining the age of twenty-one years or without having lawful issue, it is my will and desire that one-fifth of my estate go to my nephew and niece Zachariah H. Goldsmith and Priscilla H. Blakistone. Then the rest of my entire estate I give and bequeath to my nephew Zachariah D. Blakistone. (10) It is my wish and desire that my nephew Z. D. Blakistone have the management and take charge of the education of my two children and use the proceeds of my estate for their benefit till they arrive at age. (11) It is my wish and desire that immediately upon his and as soon as possible after my decease, my executor should send a copy of this will directed by my nephew Z. D. Blakistone, Milestone post office, St. Mary's county, state of Maryland; and that as soon as my executor shall have settled up my estate, it is my wish and desire that my nephew Z. D. Blakistone take charge of my estate and use it under the provisions of this will for the benefit of my son and daughter John M. Goldsmith and Mary Mildred Goldsmith, till they arrive at age as aforesaid after which they will take the management of it themselves. (12) Having full confidence in the integrity and ability of William Collins of the city of Davenport, both as a man and a brother of the Sons of Temperance I hereby appoint him executor of this my last will and testament.

The theory of plaintiffs is that John M. and Mary Mildred took but a life estate in the realty described, with power to

appoint the fee, and for this reason they could not convey the fee, and their warranty deeds were not effective for that purpose but conveyed only an estate in the property during their lives; that the power to devise was exercised by John M. Goldsmith, but the execution of the will referred to vested title to an undivided one-half in them, and that, as Mary Mildred did not exercise the power to appoint the undivided half which she might have so disposed of, became a part of the estate of Zachariah H. Goldsmith, and that plaintiffs inherit from him, through John M. Goldsmith, an undivided one-half thereof, and her children the other half. On the other hand, the defendants claim absolute ownership for that, as they contend, John M. and Mary Mildred Goldsmith took title in fee simple and not a life estate only under the will of Zachariah H. Goldsmith; (2) the power to appoint was not legally exercised; (3) was extinguished by the execution of the warranty deed; (4) the decree procured by John M. and Mary Mildred Goldsmith in 1866 is binding on plaintiffs; and (5) defendants have acquired title by adverse possession. It should be added that the widow of Zachariah H. Goldsmith died in 1867, and that John M. and Mary Mildred Goldsmith were his only heirs; also that, since the conveyance to Fries in 1873, the defendants and their grantors have been in undisturbed possession of the property in controversy, which is situated in the business portion of the city of Davenport, with brick buildings thereon, and is very valuable, under claim of exclusive title to the entire property which was not disputed until plaintiffs laid claim thereto in 1907, save that in 1903, after the death of John M. Goldsmith, plaintiffs instituted inquiries concerning the condition of the title thereto.

I. The will of John M. Goldsmith, though duly probated in Virginia, was never admitted to probate in this state. A copy thereof and of the record of its admission to probate in Virginia were duly certified and undoubtedly established its existence there and the action of the court in that state; but, to constitute it a muniment of title in this state, a foreign will must

1. WILLS: muniment of title: necessity for probate.

have been admitted to probate as directed in section 3294 of the Code. Section 3296 expressly provides that: "Wills, foreign or domestic, shall not be carried into effect until admitted to probate as hereinbefore provided, and such probate shall be conclusive as to the due execution thereof, until set aside by an original or appellate proceeding." *Otto v. Doty,* 61 Iowa, 23; *Thrasher v. Ballard,* 33 W. Va. 285 (10 S. E. 411, 25 Am. St. Rep. 894); *Crusoe v. Butler,* 36 Miss. 150. This conclusion disposes of the claim under the will of John Mason Goldsmith, but not of their claim as heirs taking one-half of the interest of Mary Mildred in the property. She died in 1882 without exercising the power to devise alleged to have been conferred by Zachariah's will, and, on plaintiff's theory, the one-half then descended to Zachariah's heirs and John inherited one-half. This being so, defendants and their grantors held adversely to him more than twenty years, and thereby their title to the one-fourth of the lot inherited by him became perfect.

II.   But this leaves the title open to farther controversy; and another ground for reaching the same conclusion may as well be considered. And, first, did John M. and Mary Mildred take merely a life estate in the lot or the entire title thereto? It will be observed that, in the first clause of the will, the testator gave this and other lots to his two children, John M. and Mary Mildred, specifically describing said lots, including that in controversy. As the term "heirs" or other words of inheritance were not necessary to create or convey an estate in fee simple in 1854, this clause, standing alone, passed the entire title to the lot. Section 1200, Code 1851. See section 2913, Code. But, if insufficient for that purpose, the seventh clause devised anything not previously disposed of to them, and confirmed the devise contained in the first clause. Was there any subsequent limitation of the fee-simple title thus apparently conferred?

By the eighth clause, these and other clauses preceding

2. SAME: construction: estate granted: provisions against alienation.

are made subject to it, and therein the testator directs "that my estate . . . be used only so far as the interests from rent may arise upon the property, but with no power to sell during the lives of my said children. At the same time, it is my will and desire and direction that my children have full power to give and bequeath at their death the property above devised to them to any person, to whom they shall think proper." This no more than declares that the devisees shall enjoy the use only without selling, but may dispose of by will. This merely limits the enjoyment and right of alienation. But limitation of the enjoyment is not repugnant to the clause disposing of the fee. *Elberts v. Elberts,* (Iowa) 141 N. W. 57.

Another possible construction is that the rents and not the realty were to be appropriated by the executor to the payment of legacies, and the right to will limited to the period of minority as intimated in the ninth clause; but, in view of the context, such a construction would not seem tenable nor in harmony with the testator's intention. The ninth clause proceeds on the theory that something more than a life estate had been given to the children in the portion of the will preceding, for it is therein provided that, "should either of my children die before attaining the age of twenty-one or without having lawful issue, and without will, then the survivor shall have the entire benefit of my estate. Should both of my children die before attaining the age of twenty-one years or without having lawful issue," the property should pass to others. The clear implication from this clause is that, in the absence of the contingencies mentioned, John M. and Mary Mildred shall take the fee, for the only force possible to be given the conditions contained therein is to render the fee, otherwise absolute, determinable. *Wheeler v. Long,* 128 Iowa, 643; *Jordan v. Woodin,* 93 Iowa, 453. As neither died before attaining twenty-one years of age, nor without issue, this clause can be accorded no consideration other than entitled to in ascertaining the nature of the estate devised to the children. The eleventh clause of the will provides for the care

of the property during minority of the children, but expressly directs that they shall thereafter "take the management of it themselves." Nothing in the instrument other than the eighth clause then tends to impair the inference that a fee was intended to be given to his children by the testator by the first and seventh clauses. They were the objects of his bounty and so intent was he in conferring it on them that no provision was made for the disposition of reversion or remainder, save on the contingencies mentioned in the ninth clause, which never happened. Reverting to the eighth clause, it is to be observed that this restriction, together with limitation of the use, impliedly at least, recognizes an estate larger than for life. But no condition for forfeiture or penalty is specified for violation of the provision withholding the power to sell. The language employed in no manner limits, or purports to limit, the estate taken by John M. and Mary Mildred, nor does it provide for its reversion generally or to particular persons on conditions broken.

Conditions against alienation contained in devises of this character are universally denounced as void. *Ogle v. Burmister*, 146 Iowa, 33; *Teany v. Mains*, 113 Iowa, 53. The evident design of the testator was that the devised property be retained by his children during life and be disposed of only in a manner which could not affect their enjoyment of its use. Surely the prohibition of alienation during life may not be construed to reduce the estate in fee previously bestowed to a life estate. *Muhlke v. Tiedermann*, 177 Ill. 606 (52 N. E. 843).

The power to dispose of by will added nothing to the right to alienate property to which absolute title had been acquired under prior clauses in the will. "He that hath an estate, that he can will to whom he pleases, or, if he make no will, that will descend to his heirs at law, assuredly hath a fee." *Fairfax v. Brown*, 60 Md. 50.

In *McIntyre v. McIntyre*, 123 Pa. 329 (16 Atl. 783, 10 Am. St. Rep. 529), the testator willed "to my daughter, Mary

McIntyre, the one-half of the land that I possess above the road, that is the north end. She will not have the power to sell, but may leave the same to her children.'' And, in construing this, the court said: ''The first sentence of this clause undoubtedly, in connection with the introductory words, gives a fee to Mary. It is equally clear that the attempted restraint upon alienation contained in the first part of the second sentence is void as being in conflict with the fee given by the preceding sentence. The only remaining question is as to the effect of the additional words of the second sentence, 'but may leave the same to her children.' Do these words reduce the estate of Mary from a fee to a life estate, with a power of appointment to her children? If the words were imperative, if the word 'shall' were used instead of the word 'may,' there would be great, perhaps controlling, force in the proposition that the words, taken together, were so indicative of an intent to limit Mary's interest to a life estate that we would be obliged to hold that, both before and after the act of 1833, her interest was a life estate only. But when the testator says simply that she may leave the land to her children, and does not say that she may not leave it in any other way, we cannot say that he does anything more than merely express a hope or desire that she may so leave it.'' See, also, *Fristoe v. Latham* (Ky.) 36 S. W. 920.

In *Byrne v. Weller,* 61 Ark. 366 (33 S. W. 421), the fifth clause of the will read. ''The remainder of my goods, chattels and effects of every character and kind, both real and personal, I will and bequeath to my beloved wife, Julia A. Maddox, to dispose of she may choose and desire at her death''; and the court held that: ''The meaning and extent of the disposition of the residue of the estate must be found solely in the devise contained in the fifth clause of the will; and, since this language is without words expressly limiting the devise to a less estate than the fee, that the same carries the fee, and the words of disposition therein contained should take effect

after the death of the wife, are surplusage, as the owner of the fee already had the right there attempted to be conferred.''

These decisions are pertinent in holding that the circumstance that the power to will or dispose of at death, added to a gift of the fee, does not impair the fee but merely expresses an incident to its enjoyment. The restriction to the enjoyment and use, coupled with the denial of the power to alienate, means no more or less than such denial without such restriction. It merely makes clear the interest left in the property when the power of alienation is eliminated. The enjoyment of its use is all that is left. But, to the creation of a life estate, a reversion or remainder over is essential, and none such was provided in Zachariah's will, unless this should be created by will of the children. But they were not required to dispose of the property in any designated manner, nor to any specified person or class. They were under no obligation to execute a will, and, if they chose to do so, they were left free to do with it as they might choose. No one else was given an interest in the property. In the absence of reversion or limitation over, the clause prohibiting alienation was nugatory for that there was no one to insist upon obedience thereto. The children even, in event of reverter, would take the estate. Moreover, the restriction of sale impliedly indicates that the devisees owned that which was not to be sold. Having given the lots absolutely to John M. and Mary Mildred, the testator could not at the same time deny them of power of alienating the same, for such power is inherent in ownership. The gift or the denial of such power must fail, and, as we have seen, it is the latter which is held to be invalid. *Law v. Douglass,* 107 Iowa, 606. As said in that case: ''There are some things, however, which even a testator may not do and which the courts are powerless to aid him in doing, however clearly expressed. He cannot create fee with absolute power of disposal and at the same time clog that power by limitations over to another; in other words, he cannot include provisions which are absolutely inconsistent in terms and meaning and

have all given force and effect." See *Meyer v. Weiler,* 121 Iowa, 51; *In re Will of Weien,* 139 Iowa 657. The denial of the power of sale, being inconsistent with the terms of the gift, must fall; and, as we construe the will to pass the fee title to John M. and Mary Mildred, this necessarily rejects the theory of appellants that it merely passed a life estate with power of disposal by will annexed.

Appellee also contends that the decree entered in 1866 was conclusive in this case, basing the argument on the doctrine of virtual representation. See *Bofil v. Fisher,* 3 Rich. Eq. (S. C.) 1 (55 Am. Dec. 627); *Gifford v. Hart,* 1 S. & L. (Ire.) 386; *Hale v. Hale,* 146 Ill. 227 (33 N. E. 868, 20 L. R. A. 247). Also that John M. Goldsmith, having conveyed the lots by warrant deed, could not thereafter exercise the power to devise optional with him, in derogation of the title previously conveyed. See *McFall v. Kirkpatrick,* 236 Ill. 281 (86 N. E. 144). As we entertain no doubt but that the trial court correctly interpreted the will, it is unnecessary to pass upon these issues. Were some right dependent thereon, or had we the leisure necessary to satisfy the curiosity expressed by appellee's counsel, we should pass on these points also.

As it is, we are content with our conclusion that the decree in each case, for the reasons stated, should be and is *Affirmed.*