# CHARLESTON.

## THRASHER *v.* BALLARD.

*(GREEN, JUDGE, Absent.)

Submitted September 13, 1889.—Decided November 22, 1889.

1. EVIDENCE—RECORDS OF VIRGINIA COURTS.

    A copy of a record or paper in the clerk's office of any court in the State of Virginia, attested by the officer in whose office the same is, is admissible as evidence in this State, though it has not the seal of the court or a certificate of a judge, as required by the act of congress relating to authentication of records.

2. EVIDENCE—WILLS.

    A copy of a will having annexed the following certificate: " Virginia. In W. county court, September term, 1888. The will and testament of M. S., deceased, dated 2d February, 1884, was presented in court, proved by the oaths of R. C. J. and H. B. C. B., two of the subscribing witnesses thereto, and ordered

---

*On account of illness.

to be recorded.   Teste:   William B. F., Clerk.   A copy.  Teste: William B. F., Clerk,"—is, as regards mere form or manner of attestation, admissible.

3. Evidence—Wills—Foreign Probate.

A sentence of probate made in another State upon a will is not evidence in the courts of this State of the validity and due execution of the will as to lands situate in this state devised by it, so as to pass title to such land to the devisee.

*L. J. Williams* and *J. H. Holt* for plaintiff in error.

*F. Hereford* for defendants in error.

Brannon, Judge:

Lucy J. Thrasher brought an action of ejectment in the Circuit Court of Monroe county against Lewis Ballard and others to recover a tract of land. The case was tried by the Court in lieu of a jury, and, judgment being rendered for the defendants, the plaintiff obtained this writ of error.

Both sides claimed under George B. Moffat. George B. Moffat, by deed dated October 3, 1856, conveyed the land to Daniel Stoner, trustee, to hold according to a trust defined in a deed from Daniel Stoner to William Nossinger, dated March 12, 1845; this land so conveyed by Moffat coming from the sale of, and reinvestment of the proceeds of, the land conveyed to Nossinger. The deed defining this trust provided that Matilda Stoner might give the property therein conveyed, or such portion as she might see proper, to her husband, or their children, by will.

On the trial the plaintiff, to show title in her, introduced a paper purporting to be the will of Matilda Stoner, devising this land to the plaintiff, with the following certificate appended: "Virginia. In Wythe County Court, September term, 1888. The will and testament of Matilda Stoner, deceased, dated 2d February, 1884, was presented in court, proved by the oaths of R. C. Jackson and H. B. C. Buford, two of the subscribing witnesses thereto, and ordered to be recorded. Teste: Wm. B. Foster, Clerk. A copy. Teste: Wm. B. Foster, Clerk." The defence objected to its being read, and the court permitted it to be read, subject to the objection. The objection was that it was not properly authenticated, and because it had not been recorded in Monroe

county. It is suggested that it is without the court-seal and a certificate of a judge, as required by section 19, c 130, Code 1887, which embodies the act of congress touching the authentication of records of one state for use as evidence in others. But section 5 of same chapter, as to Virginia records, without regard to date, provides that a copy of any record or paper in the clerk's office of any court of that state, attested by the officer in whose office the same is, simply signed by him, shall be received as evidence. This provision must operate as an exception to section 19, requiring less authentication than do it and the act of congress. This section does not exclude a copy authenticated as the act of congress prescribes, but does admit copies certified without the seal and certificate of the judge. It seems to be generally agreed that the mode of authentication prescribed by act of congress as to records of courts and public documents is not exclusive of any which the states may think proper to adopt. Opinion in Ex parte Povall, 3 Leigh, 816; 1 Greenl. Ev. §§ 489, 505. As to mere form of authentication, though not fully formal, it is one long used, and is good. *Wynn* v. *Harman*, 5 Gratt. 157.

But, looking not to mere form, was it admissible, and competent to vest legal title in the plaintiff? Was such its effect? Section five operates merely as to mode of authentication prescribing a mode of authentication of evidence substituted for the original, and only says that such copy shall have the same effect as the original. Thus we are remitted to the original. Then, what effect has this will, and its Virginia probate in 1888? Now, the deed referred to vested Matilda Stoner with a power of appointment, to be exercised by will. When the deed disposing of the subject prescribes a form and mode of appointment, that form and mode must be observed. Opinion in *Ocheltree* v. *McClung*, 7 W. Va. 249. It must be accurately conformed to, (Perry, Trust, § 511*b;*) and 'in cases where the appointment is to be carried out by will our statute (Code 1887, § 4, c. 77) is explicit: "No appointment made by will, in the exercise of any power, shall be valid, unless the same be so executed that it would be valid for the disposition of the property to which the power applies, if it be-

longed to the testator." It therefore must appear that Matilda Stoner did make such a will as would pass her own absolute real estate. By this paper the plaintiff sought to prove this. Then came the question, is this her valid will? Of this there was no evidence but this Virginia probate. That could have no force beyond Virginia. It could not operate to pass land in this state by establishing the due execution and validity of the will. 1 Minor, 942, 943; *Sneed* v. *Ewing*, 5 J. J. Marsh. 450; *Rice* v. *Jones*, 4 Call, 89; 1 Lomax, Ex'rs., c. 3, p. (341) 555; *Bowen* v. *Johnson*, 5 R. I. 112; *Ives* v. *Allyn*, 12 Vt. 589; *Kerr* v. *Moon*, 9 Wheat. 565. An executor of one state has no power of suit in another, without re-probate and qualification in such other state. *Kerr* v. *Moon*, *supra*; 1 Rob. Pr. (New) 161, 162. There the foreign probate is ineffectual. Why not here? It may be argued that the act of congress touching the authentication of records provides that such faith and credit shall be given to the public records and judicial proceedings of one state in every other state as they have in the state whence they come.

It has been held that probate orders do not fall, like judgments *inter partes* in ordinary suits, under this provision, but partake of the nature of *in rem* proceedings, binding only the property; *Bowen* v. *Johnson*, *supra*; while the reverse view has also been held; *Balfour* v. *Chew*, 5 Mart., N. S. 517. But grant that probate sentences do fall under the act of congress. That gives the order such force as it has in Virginia, and the force it has there as to property is local and does not affect realty in another state, which is governed by the *lex loci rei sitæ*. In the words of Story, Const. § 1313, "the constitution did not mean to confer a new power or jurisdiction, but simply to regulate the effect of the acknowledged jurisdiction over persons and things within the territory."

It may also be argued that it is not the will, as a will, that passes title, but it is the force of the deed, which, upon the due execution of the will, shifts the estate from the trustee to the appointee. Point 7, *Ocheltree* v. *McClung*, 7 W. Va. 232. This is true. Still, it must be shown that the event upon which the appointment takes effect has occurred. If

by deed, that it has been made; if by will, that it has been made—made as the law requires it to be made; so made under our statute, that it would be effectual to pass the trustee's own property. And this must be shown by production of the original will, with due proof of it, or original probate of it here, or re-probate by copy based on the Virginia probate, under the statute.

Our Code, c. 77, § 25, makes provision for the probate of wills made elsewhere relative to estate here by production in this state of a copy of the will and foreign probate, and provides that the same shall be admitted as a will of personal estate only, or real estate also, according to what is shown by the probate abroad. If the foreign probate were conclusive and effective without this statute, why this statute? Simply to give more convenient or additional evidence? Most of the states have similar acts. I think they were enacted because of the general principle that judicial proceedings in one state have no extraterritorial force as to estate beyond the state, which is governed by the law of the place of its situation. 1 Redf. Wills, 401, states: "In those American states where the probate of wills is conclusive both of real and personal estate, the courts of equity will not assume jurisdiction to compel the performance of a trust arising under a will proved in another state, but of which there has been no probate, or its equivalent, by filing a copy of the original probate in the state where the trust is claimed to be enforced, and into which state the funds belonging to the estate have been removed by the personal representative. Probate and administration are entirely local." See *Curtis* v. *Smith*, 6 Blatchf. 537 (28 Myer's Fed. Dec. p. 577, § 99.)

In *Kerr* v. *Moon*, 9 Wheat. 565, it was held that under the statute of Ohio, which permits wills made in other states, concerning property in that state, to be proved and recorded in the court of the county where the property lies, it must appear that the requisitions of the statute have been pursued, in order to give the will the same validity and effect as if made within the state. In opinion in *Lapham* v. *Olney*, 5 R. I. 413, it is declared, "foreign probate is no evidence of its validity;" that is, of a will. *Bowen* v. *Johnson*, Id. 112, declares second probate necessary under the statute

referred to, and holds that when a foreign probate is presented for re-probate it has a *prima facie* force for that occasion. The opinion in *Curtis* v. *Smith, supra,* expresses the opinion that no other evidence on that occasion can be received. Inferentially the necessity of a probate by copy in this State is recognized in opinion by HAYMOND, J., in *Smith* v. *Henning,* 10 W. Va. 619.

A question has been argued as to whether the order admitting this will to probate generally, simply without disclosing upon what evidence it was admitted, would make it a valid will as to real estate. Judge BROCKENBROUGH in *Ex. parte* Provall, 3 Leigh, 816, raised this question, but did not decide it. It is argued that *Smith* v. *Henning* decided that such a probate in Virginia makes it, so far as this point is concerned, a will of realty here. Without deciding it, I think the Court regarded that will a will of realty, because it was probated in Greenbrier expressly as a will of personal and real estate, which re-probate, while in force, was conclusive on that question, as it has even been decided that the probate of a will having but one witness was, because of probate, valid as a will of realty. *Parker* v. *Brown,* 6 Gratt. 554. An admission to probate generally makes the will valid as a will of both personalty and realty. *Norvell* v. *Lessueur,* 33 Gratt. 222. As the law of Virginia at the date of this will, as to the manner of execution of wills to pass land, was the same as here, as we judicially know, I incline to think that such a general admission to probate would justify its being regarded a will of land here; but we do not regard it necessary to decide as to this, and do not express a final opinion. The plaintiff, thus, not having shown title, there was no error in rendering judgment against her, as a plaintiff must, in ejectment, show title.

The appellant assigns error in the refusal to allow him to take a nonsuit and a new trial. When was the motion for nonsuit and new trial made? The bill of exceptions states in its opening that it was taken to the finding and judgment of the court, and the action of the court in overruling her motion, and refusing, after the finding and judgment had been rendered, to allow her to take a nonsuit, and also refusing a new trial. It then proceeds to give suc-

cessively, in detail, items of documentary evidence and facts agreed, and then passes on objections taken to the documentary evidence during the trial, and among the items, at its close, excluded the said will. In the next paragraph it says : "And the court thereupon found for the defendants." It then contains formal exceptions to the court's action. It seems, therefore, that it was after judgment that the nonsuit was asked for, and also after the court had announced its rejection of the will. What time intervened between the exclusion of the will and the finding and judgment, we do not know. Usually, when the case is tried by a jury, the party knows exactly what evidence is in, and what the views of the court on the law of the case are ; but, where the case is tried by the court, sometimes there is no interval between rulings on the admission of documents, where they go in, as here, subject to objection, and the announcement of the finding and judgment, and little or no time is given for reflection, which is, under such circumstances, important. In many instances, this might operate as a surprise. Often, generally, the judge in one and the same opinion passes on the reserved objection to evidence, and in the next breath, as it were, announces his finding and judgment, giving no opportunity for a nonsuit, except by a disagreeable or apparently contemptuous interruption of the judge in delivering his opinion. At common law a party could take a nonsuit at any time before the court received the verdict. Our statute limits this, where there is a jury trial, by requiring it to be done before the jury retires.

This cause was tried by the court. What is the rule in such cases ? But three cases of this kind have come under my eye—two in Indiana, one in Illinois. In Indiana, it was held too late to ask a nonsuit after the court announced its finding, but before the finding was entered on the order book. The court treated this finding as a verdict, and said : "The plaintiff ought not to be permitted to take chance of getting a verdict, and, after the verdict is given against him, escape from it by means of a nonsuit." *Doughty* v. *Elliott*, Blakcf. 405. The other Indiana case is *Long* v. *Thwing*, 9 Ind. 179, holding that after judgment it was too late. The record showed : "The court, after hearing the evidence in the cause,

find for the defendant. It is therefore considered that the defendant recover of the plaintiff his costs expended. Whereupon the plaintiff moves the court for leave to suffer a nonsuit." The Illinois case is *Howe* v. *Harroun*, 17 Ill. 494, holding that "where a case is submitted to the court for trial the plaintiff may take a nonsuit after the court has announced its opinion, and before a note thereof is entered." The opinion says :

"By the common law the plaintiff could take a nonsuit at any time before the verdict of the jury was announced to the court. And we have a statute which further restricts the right, requiring the plaintiff to take a nonsuit before the jury leaves the bar to deliberate upon their verdict. But in the case before us there is no law limiting the right to any particular time. * * * Both by common law and by our statute, when the case is tried by a jury, the plaintiff, before he determines whether he will take a nonsuit, not only has an opportunity of knowing precisely what the testimony is upon which his rights depend, and upon which the jury are to act, but he also hears the charge of the court to the jury. * * * And all know, who have carefully observed the course of *nisi prius* trials, that it is necessary to understand how the law is to be laid down to the jury * * * to enable a party judiciously to determine whether or not to take a nonsuit; while it may be conceded, with equal propriety, that the party should not know what is the opinion of the jury. Now, both these desirable ends can not be attained when the court tries the question of fact in place of the jury. Either the plaintiff must have the benefit of the views of the court upon the law by which the case is to be governed, which can only be done after the court has expressed an opinion, or else he must be deprived of a right which has always been guarantied to him by the common law. * * * It may be impracticable to secure to him the right of knowing the views of the court upon the law of the case without his also becoming informed of its views of the facts. * * * As it is, we must either abridge or extend the common-law right. We prefer to adopt the latter course, as we think it more conducive to justice."

The judge also said: "It is not a very easy matter to say

what the rule should be." All practitioners know how important, in many instances, is this right of nonsuit. Where a party finds his documentary evidence defectively authenticated, or has failed to prove some fact, or any other difficulty in his way exists which might be repaired and removed on another trial, it is essential to him, it and to the ends of justice.

The majority of the Court are of opinion that as the court did not pass on the objection to the admission of the copy of the will when offered, but reserved such objection, and allowed it to go in evidence subject to such objection, and it not appearing that there was any interval of time between the rejection of said copy and the announcement of the finding and judgment, affording opportunity for a nonsuit, the judgment must be reversed. My own opinion is that error is never presumed, but must affirmatively appear; and that the bill of exceptions must show that there was no interval of time, affording an opportunity to take such nonsuit before the finding, in order to reverse the judgment for refusal of a nonsuit; and that it is too late, after such finding, to ask a nonsuit; and that no ground for a new trial is shown in this case on that score. I would not reverse the judgment. By a majority of the court the judgment is reversed, the finding set aside, and the cause is remanded to the Circuit Court of Monroe for a new trial.

REVERSED.   REMANDED.