# CHARLESTON.

## KYLE v. HUDDLESTUN *et al.*

Submitted April 24, 1917.    Decided May 8, 1917.

1. HUSBAND AND WIFE—*Use of Wife's Separate Property—Estoppel.*
   If a wife permits her husband so to use and treat her separate personal property, as to induce belief in good faith, on the part of a stranger having no knowledge of her title, that the husband is the owner thereof, and accepts the benefit of a sale thereof, made to such stranger by him, directly or indirectly, and under circumstances proving knowledge of such sale on her part and her acquiescence therein, she is estopped from asserting her title against such purchaser. ' (p. 441).

2. SAME—*Husband's Sale of Wife's Property—Rights of Purchase.*
   If, in such case, the property is delivered at the place of delivery stipulated in the contract of sale and the purchase money paid, the purchaser may rightfully take possession of it.  (p. 441).

3. APPEAL AND ERROR—*Setting Aside Verdict—Evidence.*
   A verdict against the clear and decided preponderance and weight of evidence will be set aside.  (p. 442).

Error to Circuit Court, Greenbrier County.

Action by Sarah F. Kyle against D. F. Huddlestun and others.  From a judgment of the circuit court on appeal from justice's court in favor of the plaintiff, defendants bring error.

*Reversed, verdict set aside, and new trial granted.*

*John W. Arbuckle,* for plaintiffs in error.

*T. N. Reed,* for defendant in error.

POFFENBARGER, JUDGE:

The judgment complained of on this writ of error was recovered in a circuit court, on appeal, in an action started in a justice's court, for the recovery of the value of a lot of railroad cross-ties alleged to have been wrongfully taken and converted to their own use, by the defendants.

The ties were made from timber the plaintiff claims to have purchased.  A certain heifer was traded for the timber and $2.50.  The heifer and a male calf had been received from

one Kirk, in exchange for a horse, and she had obtained an interest in the horse by her payment of boot-money incident to another trade, wherefore the heifer calf became hers and the other went to her husband. They say the trade of the heifer for the timber was made in the road at their house and both were present. She claims to have sold half of the timber to G. W. Higginbotham for $20.00, (which he never paid), before it was manufactured into ties. She also claims to have paid half of the bills for the sawing and hauling, and produces receipts taken in her name for the greater part of one-half of the sawing and all of one-half of the hauling. In addition to some hands employed, her husband and Higginbotham worked in the timber. The ties were placed at the railroad in two equal piles, one for the plaintiff and the other for Higginbotham.

Claiming to have advanced about $400.00 on the ties, under a contract, made before they were gotten out, with Higginbotham, for purchase and delivery thereof at the railroad, the White Sulphur Supply Company through its manager, loaded all of them into cars and took them away, over the protest of the plaintiff. Part of the advancement had been made through the Mountain Milling Co., at the instance of the White Sulphur Company. Both companies, Crickenberger, manager of the supply company, and Huddlestun, manager of the other, were all made defendants and judgment taken against them.

Higginbotham swears he bought his half interest from plaintiff's husband, and that the other half was given to him "to stand good for" Kyle's "account until this timber was got out." The White Sulphur Company admittedly had a judgment against Kyle and would not credit him. Kyle went with Higginbotham to see Crickenberger and stood by while he made the contract of sale, in advance of the making of the ties, on which the advancements were made. Higginbotham gave orders on the company to Kyle and to the hired men for goods, including feed for stock, and perhaps, money, and boarded with Kyle while the work went on. While it was in progress, the Kyles, as well as Higginbotham, largely lived and fed their stock out of the company stores. Mrs. Kyle

never gave the timber or the work any personal attention of any consequence. Her husband superintended the work, took the receipts, kept the papers and hired the sawyer. She understood Higginbotham was to pay her "for his horse hire and board" through the supply company and she "got the stuff out of the supply company store," on his orders. Everything advanced on the work was charged to Higginbotham. The sale could not be made to Higginbotham, until after he had interviewed Crickenberger, for he had no money.

Hylton from whom the timber was bought says he sold it to Mr. Kyle and the trade was closed, not in the road at Kyle's, but at McGrady's, after the talk at Kyle's, but on the evening of the same day, and in the absence of Mrs. Kyle, but with Higginbotham present. While they talked in the road, Mrs. Kyle's title to the heifer was admitted, but she told Kyle he would have to pay her $40.00, if he traded it for the timber. He says Mrs. Kyle's conversation in the road was limited to the heifer and she took no part in the timber trade beyond the assertion of her claim against Kyle for $40.00. Kern, the sawyer says Kyle let him have a cow on the saw-bill at $45.00 and, at Mrs. Kyle's request, he credited on the account, $5.00 a man working for him owed her. None of Hylton's or Higginbotham's testimony is expressly denied. Nothing stands against it except the inconsistency of the plaintiff's and her husband's claim as to her ownership of the heifer and her purchase of the timber and resale of half of it to Higginbotham.

The plaintiff's ownership of the heifer, if established, does not necessarily make her the owner of the ties, as against the White Sulphur Supply Company. There is a widely operative principle known as estoppel, which forbids assertion of her title, if she knowingly permitted her husband, by the use of her personal property, to obtain credit upon it, under belief in good faith, on the part of a stranger, induced by his representation of his ownership, with her knowledge and acquiescence, that it belonged to him. 13 R. C. L. p. 1165. Title, Husband and Wife, sec. 191, citing numerous authorities fully sustaining the text. An overwhelming preponderance of the evidence adduced brings this case within that

principle. Mrs. Kyle knew the White Sulphur Co. was advancing goods, feed and other things of value, on a contract of purchase of the ties, but it had no notice of any claim of title by her. The arrangement was made with Higginbotham, only after he had made the contract of sale with the defendant company and procured the credit. Her husband says so. He does not deny his presence and silence at the interview. He got Higginbotham to go and went with him. By Higginbotham's sale of the ties assented to and procured by him, he and his wife and Higginbotham, obtained their full value and, possibly, more, from the supply company. Whether he or she made the arrangement with Higginbotham, they together knowingly obtained the full value of her alleged one-half from the supply company, on the strength of Higginbotham's contract, and they carefully concealed from it all knowledge of her alleged interest in the ties.

As between Higginbotham and the supply company, the title passed to the latter, on delivery of the ties at the railroad, and the plaintiff is estopped by her conduct, from assertion of title in herself.

Being plainly against law, the verdict should have been set aside. The judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed, verdict set aside, and new trial granted.*