## ·  CHARLESTON.

C. H. HETZEL, JR. *et al. v.* MRS. C. T. KEMPER.

(No. 5714)

Submitted November 9, 1926.   Decided November 16, 1926.

APPEAL AND ERROR—BROKERS—*Verdict Against Clear and Decided Preponderance of Evidence Will be Set Aside; in Action by Real Estate Agent for Commission, Evidence Held Insufficient to Support Judgment for Plaintiff.*

A verdict against the clear and decided preponderance and weight of the evidence will be set aside.

Error to Circuit Court, Kanawha County.

Action by C. H. Hetzel, Jr., and others, against Mrs. C. T. Kemper.  Judgment for plaintiffs, and defendant brings error.

*Judgment reversed; verdict set aside; new trial ordered.*

*E. S. Bock* and *W. E. R. Byrne,* for plaintiff in error.

*Leo Loeb, Robert H. C. Kay* and *B. J. Pettigrew,* for defendants in error.

WOODS, JUDGE:

Plaintiffs sued defendant in assumpsit for commissions claimed by them in a certain real estate transaction.  Judg-

ment was entered on a verdict for the plaintiffs. Defendant comes here on a writ of error.

The sole ground of error alleged is that the verdict is against the decided weight of the evidence, and is against the plain and unequivocal inferences arising from established facts. In the summer of 1924, Mrs. Backus, sometimes called Mrs. Edwards, who was at that time the owner of a lot on Kanawha Street in the City of Charleston, placed the same with defendant, Mrs. Kemper, the plaintiffs, C. H. Hetzel and L. L. Martin, and other real estate agents, for sale, at the same time and at varying prices. No agent was given the exclusive right of sale. In the latter part of August or the fore part of September, plaintiff Hetzel and defendant casually met on Capitol Street of said city. A conversation ensued between them. Hetzel testifies that he told Mrs. Kemper that he had a lot on Kanawha Street for sale, and that Mrs. Kemper replied that she had a prospective buyer for a lot on said street, and that thereupon he and Mrs. Kemper orally agreed that he (Hetzel) should see said prospective buyer, namely O. L. Davis, and that Mrs. Kemper should see Mrs. Davis, for the purpose, if possible, of selling the lot to said Davis, and that if a sale was made to him the commission would be divided equally among the two plaintiffs and defendant. A short time after said alleged conversation, Mrs. Kemper sold the lot to Davis for $22,000.00. Hetzel and Martin claimed two-thirds of the commission of $1,500.00. Mrs. Kemper denies that such agreement was made, and maintains that she had the Backus lot for sale for two or three months before the alleged conversation with Hetzel. As to the latter, she is corroborated by Mrs. Backus, the owner of the lot. Mrs. Kemper states that she had taken up the matter of the sale of the lot with Mr. Davis a number of times running over a period of two or three months; that she presented the lot to him in July, before he went on his vacation, and in this Davis corroborates her; and that she told Mrs. Backus that "as soon as Davis came back I would sell him the lot; I felt sure he would buy it at that price." In this statement she is again upheld by the testimony of Mrs. Backus. This was the situation at the time that

Mrs. Kemper, in the language of Hetzel, said to him: "If you have a lot on Kanawha Street, I know where I can sell it. The Davises are looking for a lot on Kanawha Street. I think the lot you have for sale will suit them. You go and see Mr. Davis and I will see Mrs. Davis. We will split the commission three ways." Did Hetzel see Davis? Hetzel says: "I went to Mr. Davis' office but couldn't find him. I went back later and found him in the hall. I said, 'Mr. Davis, I have a lot on Kanawha Street I want to submit to you.' He said, 'I am very busy now, and can't talk to you.' I said, 'Will you go and look at it?' He said, 'I will get my wife to go and look at it.'" It is significant that Hetzel does not say that he told Davis that it was the Backus or Edwards lot. Davis has no recollection of Hetzel's coming to see him. Thus we see he is not only unsupported as to a material part of the contract which he contends was made, but in fact by his own statement fails to state he saw Davis as to this particular lot. Hetzel further says that Mrs. Kemper, at the time of the oral contract, said nothing about her having for sale a lot on Kanawha Street, and that "she was very much elated that I had this lot, because she thought it was just the thing her clients would want." In view of the situation disclosed in the evidence, is it probable that Mrs. Kemper would have failed to disclose the fact that she had the lot for sale, and that she would express elation at finding that Hetzel had such lot for sale?

The plaintiffs' case rests on the unsupported testimony of Hetzel. Have they borne the burden of showing a preponderance?

A verdict against the clear and decided preponderance and weight of evidence will be set aside. *Kyle* v. *Huddleston,* 80 W. Va. 439. Of course due weight must be given to the finding of the trial court on a question of fact. However, this Court has held that this rule lays no restraint upon this Court to ascertain, by full and careful investigation and analysis of the evidence, what the facts and circumstances are and whether the general finding is consistent therewith. *Berry* v. *Colborn,* 65 W. Va. 493; *Hursey* v. *Hursey,* 56 W. Va. 148.

The verdict of a jury will be set aside, if it is against the plain and unequivocal inferences, arising from admitted or established facts. *Chapman* v. *Liverpool, & etc., Co.,* 57 W. Va. 395; *Manss-Bruning Shoe Co.* v. *Prince,* 51 W. Va. 510; *Davidson* v. *Railroad Co.,* 41 W. Va. 497; *Johnson* v. *Burns,* 39 W. Va. 658. This rule is one of universal application in appellate courts. Preponderance is with the side where the facts sworn to are the most consistent with the probability of truth, taken in view of all of the facts and circumstances in evidence in connection with the case. *Green* v. *Maloney,* 7 *Houst.* (Del.) 22. The degree of proof required to establish a fact varies according to the probability of such fact. Where the fact asserted is improbable, a high and convincing degree of proof is required. *Norfolk* v. *Holmes,* 109 Va. 407; *Shaffer* v. *Beatrice Bank,* 99 Nebr. 317; *McClanahan* v. *R. R. Co.,* 147 Mo. App. 386; *Valentine* v. *Railway Co.,* 155 Mich. 151; *Vreeland* v. *Vreeland,* 53 N. J. Eq. 387. Evidence on an issue of fact is not necessarily in equilibrium even though there is but a single witness on either side and their testimony is in direct conflict. This rule has been applied where the testimony of one of the witnesses was so inconsistent with the usual manner in which business men transact business that it looks incredible. 23 C. J. 19, § 1754. Evidence is to be weighed according to the reasonableness of the evidence given in view of the surrounding circumstances, and the inherent probabilities should be considered in determining its weight. So, the very credibility of direct evidence may be destroyed by the force of irresistible inferences. *Womack* v. *Horsley,* 178 Ia. 1079. The Supreme Court of Rhode Island, in *Taylor* v. *Taylor,* 90 Atl. 746, states the rule thus: "Evidence to be worthy of credit * * * must * * * be credible in itself, by which is meant that it shall be so natural, reasonable, and probable, in view of the transaction which it describes, or to which it relates, as to make it easy to believe it."

Applying the foregoing principles to the facts under consideration, Hetzel testifies that he had a contract; Mrs. Kemper denies it. Hetzel is interested in sustaining the contract, and getting a commission; Mrs. Kemper is interested in de-

feating the contract. The two are so far upon an equality. Conceding that the two are equally credible, then there is no preponderance in favor of Hetzel. But the facts and circumstances and reasonable inferences all tend to corroborate Mrs. Kemper. It is not reasonable to believe that she having a lot for sale and a buyer therefor would go to a rival and make a contract with him by which he would receive two-thirds of the commissions under said sale. Viewing his testimony in this light, as well as in the light of the influence of his interest in the result of this suit, the inconsistency of his claim with the usual manner in which business of the nature here defined is transacted, and the inferences as to its inherent improbabilities, the necessity for strong corroborative proof of his demands is justified under the law. So many cases are to the effect that where the established physical facts and common observation and experience conflict with the testimony of the witness, his testimony must yield and cannot be accepted as the basis of a verdict or judgment, as to leave this question of law no longer open to debate or any doubt. Add to this the emphatic denial of the defendant—all contribute to render us so very doubtful of the correctness of the verdict on the case here made that we are unwilling to let it stand. It is accordingly set aside, the judgment reversed and the case remanded.

*Judgment reversed; verdict set aside; new trial awarded.*