# CHARLESTON.

H. C. JONES *v.* S. FLOYD HOARD *et al.*

(No. 6487)

Submitted November 19, 1929.   Decided December 3, 1929.

*Jo N. Kenna* and *A. M. Belcher,* for appellant.
*Fitzpatrick, Brown & Davis* and *Holt & Holt,* for appellee.

WOODS, PRESIDENT:

This suit was brought in the circuit court of Wayne county to recover $15,000.00 deposited as a consideration for an

option, on the ground that the option was never given. On the hearing of the cause, the chancellor directed the entry of a decree for the defendants, and dismissed plaintiff's bill. It is from such action that this appeal is taken.

The principal questions with which we are confronted are: (1) Was the option in its final form ever accepted; and (2) was it ever executed and tendered in the manner contemplated?

## I.

At the time Jones approached Hoard on the question of an option on June 9th, the former was presented with a draft of a formal option, similar in most respects to the one subsequently dictated by Judge Campbell. As Jones stated, on cross-examination by Judge Holt, regarding the rejected paper, there were several things to which he would not agree —one of which was the provisions that: "If on or before the expiration of the ninety (90) days option, the said H. C. Jones and J. Walter Webb decided to purchase, they shall as confirmation of said decision make a further payment to said S. Floyd Hoard as the representative of the owners, a further sum of Ten Thousand Dollars ($10,000.00), in current funds, as guarantee of good faith, which sum together with the sum paid at the execution of this writing, shall be forfeited to said owners of said lands, if said H. C. Jones and J. Walter Webb and associates fail, to fully consummate the purchase of said lands, as herein provided for and within the time limits mentioned herein; and if said H. C. Jones and J. Walter Webb and their associates do fully consummate the purchase of said lands as provided for herein, and within the time limits provided, then the said sums which have been paid to said S. Floyd Hoard, shall be deemed as a part of the purchase price of said lands." And on this point no one denies his statement. It is apparent that Hoard's draft did not meet with Jones' approval, or it would have been accepted by Jones at the time. And as to the differences we only have Jones' statements. However, before the conference was over, Jones did put up a check for $15,000.00, as a consideration for an option thereafter to be drawn up and reduced to writing. This check was accepted by Hoard on the express un-

derstanding set out in his receipt that a ninety-day option was to be prepared "upon terms and conditions which are to be reduced to writing by said Jones and Hoard," in which Hoard's associates in title were to join, giving Jones the right to purchase the land at $40.00 per acre. Certain provisions regarding the use and forfeiture of the $15,000.00 were also incorporated in the receipt. So far as the memorandum goes it was undoubtedly binding upon the parties in the drafting of the option itself. But, in view of the undisputed testimony regarding Jones' objection to certain provisions in Hoard's original draft, the memorandum intimates that all the terms had not been definitely agreed upon, or if they had that the $10,000.00 "good faith" item had been omitted. In other words, Jones made the deposit of the $15,000.00 check in anticipation of an option agreeable to him, a few general points agreeable to both parties having been recognized and incorporated in the receipt, in the hope of later arriving at an understanding as to the terms of payment, and the ironing out of any differences between them. The next day Hoard, Webb, Jones and Napier went to the office of Judge Campbell, in the city of Huntington, who dictated a formal option in the presence of both parties, which was subsequently extended, a copy thereof signed by Hoard, and forwarded for execution to his associates in title—the heirs at law of Kate A. Baldwin, deceased. The draft, as dictated, however, was not put in writing until two days afterward. Jones says that thereupon Hoard presented it to him and wanted him to sign it, but that he refused to do so, or to accept it, stating to Hoard that he desired to go over it with his attorneys. This statement stands on the record undenied, as Hoard did not take the stand as a witness. The writing on its face purports to be between the Hoards, and his associates in title (the heirs of Kate A. Baldwin, deceased), parties of the first part, and the plaintiff and Webb, parties of the second part. It concludes with the usual provision: "Witness the following signatures and seals." It would seem, therefore, that the signing by all parties to the instrument was intended. On June 19th, Hoard advised Jones by letter that Mr. Baldwin, one of the three heirs at law, had

executed the paper as "sole executor" of his mother's estate. The letter states further: "If you and Mr. Webb will make an appointment to meet me at Huntington or here (Ceredo), at your earliest convenience, and let me know in advance, I will arrange to meet you. Jones replied on June 21st: "My attorney is preparing an option that will be satisfactory to us which we hope to send you tomorrow." The option, as executed by the parties of the first part, was mailed to Jones at Charleston on July 16th, a month and seven days after its dictation, by registered mail, and Jones sought out Hoard two days later at Ceredo, told him the option was no acceptable to him and that he would not accept it. A demand was made on Hoard at the same time to return the $15,000.00, which the latter refused to do.

The position is taken by Jones that he never agreed to all the terms set out in the final draft; especially the $10,000.00 "good faith" item, as it amounted to an additional burden not contemplated in the memorandum. The fact that such item was to be forfeited in case Jones failed to consummate the deal amounted to an additional burden. The memorandum specifically referred to the forfeiture of the $15,000.00 in case the option to purchase was not consummated. It seems reasonable that if any such additional forfeiture was contemplated that it would have been incorporated therein. To the extent of justifying the insertion of this provision, at least, the burden was cast upon the defendants to show an acceptance of the change which was made to Jones' detriment. The defendants rested their case on this point on Webb's testimony alone. Webb at this time was no longer a partner of Jones. He had dropped out because he could not meet his portion of the financial obligation, and was smarting under the fact. The following excerpt from his testimony shows his bias: "Q. You say that Dr. Jones agreed to the dictation of that paper? A. He did. Q. That was prior to having seen a transcript or copy of the dictation. A. Why certainly." Webb also says that Jones never made complaint to him later about the paper not being satisfactory. This latter fact, if true, loses its effect as substantive evidence in the light of the differences that had arisen between the parties

Jones was no longer taking Webb into his confidence. Have the defendants borne the burden of showing a preponderance? Preponderance is with the side where the facts sworn to are most consistent with the probability of truth and reasonableness, taken in view of all of the circumstances in evidence in connection with the case. *Hetzel* v. *Kemper,* 102 W. Va. 570. So, the very force of direct evidence may be destroyed by the force of irresistible inferences. Here was Jones agreeing to a paper which had not yet been put in concrete form in writing. Not even Webb goes so far as to say that he did. Jones had refused to have such provision incorporated in the contract at the time the receipt was signed. The best evidence here of his acceptance and agreement would have been that of Judge Campbell. When Hoard did not testify, nor call Judge Campbell or Napier, who were both shown to be present, the presumption is, says the law, that such testimony would have been adverse had they testified. Whether the parties consented to a contract is a question of law when the facts are not disputed. 6 R. C. L., p. 600. We are of opinion that the circuit court was not justified in finding that Jones agreed to the writing. Ordinarily, when parties agree to contract on terms to be later agreed upon and reduced to writing, the contract is not established until they agree thereto.

## II.

But, had the form and contents of the option been acceptable to Jones, did the parties execute it in such a manner as to insure Jones the right to enforce it should he so desire? An option contemplates a right which may be enforced by the party taking the option. At the time of the preliminary arrangements, as appears in the memorandum, it was understood that Kate A. Baldwin, then living in New York, had died, and that she left three (all adult)) heirs at law. So, in order to insure himself of an absolute right to a deed for all the property contemplated, the clause was inserted that the option was to be submitted to "the associates of Hoard in the ownership." Jones was not attempting to contract with Hoard alone, and run the chance of not being able to get all the signatures necessary to give him good title, but was

attempting to contract with all interested that, should he decide to avail himself of an option, he would be able to enforce the same. This phase of the contract is recognized in the purported draft by Judge Campbell. It leaves three spaces for names of the "heirs at law of Kate A. Baldwin, deceased", to be inserted, the quoted words following the blanks. But, say the defendants, the will of Kate A. Baldwin gave Geo. J. Baldwin the power as trustee to sell the property. An option to buy or sell land, as here, more than any other form of contract, contemplates a specific performance of its terms; and it is the right to have them specifically enforced that imparts to them their usefulness and value. To enforce upon the vendee a title which he may be compelled to defend in the courts is to impose upon him a hard bargain; and this, a court of equity, in the exercise of its discretion, will refuse to do, irrespective of the question whether the title is actually good or bad. 36 Cyc. 632. He cannot be compelled to accept a litigious or clouded title, if there is reasonable grounds to apprehend litigation with regard thereto, although the same may be satisfactory to a lawyer or speculator. *Spencer* v. *Sandusky,* 46 W. Va. 582. It is enough if it appears to be subject to such doubtful legality of such a nature as may reasonably be expected to expose the purchaser to controversy to maintain his title or rights incident thereto. Even the opinion of the trial court is not decisive. Courts have no means of indemnifying the purchaser, if its own opinion should ultimately turn out not to be well founded. The rule is stated in 36 Cyc. p. 636. "A doubt fatal to the vendor's suit frequently arises on the construction of a will on which the title depends. A doubt, generally of law, sometimes of fact, frequently arises as to the existence, validity, or proper exercise of a power of sale by an executor or trustee, when the vendor's title is derived through such sale." The foregoing doctrine finds ample support in the decisions of appellate courts throughout the country. Learned counsel for defendants argue in favor of a construction of the will under consideration here which would give the executor power to make the option. They admit a contrariety of opinion among courts of appellate jurisdiction, but cite cases

upholding their theory and which they claim to be sound in their reasoning. However, they admit that each case must be determined under its own circumstances. Their position is the most potent argument in favor of the rule that we have announced—doubt as to power to option.

Jones could not have enforced specific performance so far as the Baldwins were concerned. This is the true test to be applied here. Suppose that the two sisters had come in and made the claim that it would not be beneficial but prejudical to their interests to make the sale? Although the executor acted in the first instance in making the option in good faith, and within his powers under the will, he would not be compelled to perform against the interest of his beneficiaries even though the court would have compelled performance between the two persons acting for themselves. The foregoing principle applying with singular aptness to the case here has the sanction of the Virginia Supreme Court. *Givens* v. *Clam,* 107 Va. 435. The Baldwin will, stipulated from a foreign jurisdiction into the record, contains a clause, among many other provisions, giving the executor "full power to sell at any time, and from time to time, the whole or any part of the said trust estates, either at public or private sale, without the order of any court, and to re-invest the proceeds of such sale in such property *as in his discretion may seem best."* The true interpretation of this clause would depend upon its relation to the entire document. But disregarding the question of whether or not the trustee, under the terms of the will, had a right to option the land in question, we find that there was nothing on record in Wayne county, West Virginia, to show that authority. "A sentence of probate made in another state upon a will is not evidence in the courts of this state of the validity and due execution of the will, as to lands, situate in this state, devised by it, so as to pass title to such land to the devisee." *Thrasher* v. *Ballard,* 33 W. Va. 285. Approval of the holding in that case was expressed in a case of unlawful detainer of real estate, in *Bulkley* v. *Sims,* 48 W. Va. 104, in the following words: "If the plaintiff had

brought his action having no other rights than as executor * * * and under the will as probated only in New York, the case of *Thrasher* v. *Ballard* might have been invoked * * * with effect, but the plaintiff is vested with the legal title to the land." Later, in *Woofter* v. *Matz*, 71 W. Va. 67, JUDGE MILLER says: "Without probate here a foreign will is ineffective to pass title, certainly to real estate." Had the three Baldwin heirs signed the option in their own right all their beneficial interest in the estate would have been transferred regardless of whether the will was probated in this state or not. By their failure to do so, there was injected into the transaction here the grave legal question of the power of the executor to option, or even make sale of the real estate left by their mother. Jones' original undertaking and offer was to deal with natural persons, *sui juris*, and contracting on their own responsibility. The memorandum and the option as tendered shows that this was the intention. The law will not compel Jones to submit to a substitution of parties to his contract and to deal with a person only in a representative capacity. This is especially so in view of the grave doubts as to the right of the executor to contract at all with reference to the land in question.

So far as the retention of the forfeit of $15,000.00 is concerned the defendants are governed by the rules binding complainants in the enforcement of specific performance of a contract. They must show their willingness and ability to fulfill the contract on their part. *Big Huff Coal Co.* v. *Thomas*, 76 W. Va. 161; *Buffalo Coal & Coke Co.* v. *Vance*, 71 W. Va. 148; *Cleavenger* v. *Sturm*, 59 W. Va. 658. They must be prompt and eager to perform their part at all times says the law. In this case, where time was the essence of the contract, no tender is shown on behalf of Hoard's associates in title to have been made until after thirty-five days of the option had expired. Every day's delay was vital to Jones. Had he not put up his money? While Hoard was entitled to a reasonable time in which to secure the execution of an option from his associates in title, in the absence of any explanation for the delay here and under the rule applicable to

such cases he does not bring himself within the requirement of being ready at all times to perform on his part. So, viewing the case from any angle discussed, we are of opinion that the law and fact in regard thereto are with the plaintiff.

*Reversed.*