In Re:    Estate of Solon Brady Briggs, Sr., Deceased

(No. 12243)

Submitted January 21, 1964.    Decided February 25, 1964.

*Harold B. Eagle,* for plaintiff in error.

*W. A. Brown,* for defendant in error.

CALHOUN, JUDGE:

This case is before the Court on writ of error to the judgment of the Circuit Court of Summers County, by which that court adjudged that a certain writing in the form of a letter was the holographic will of Solon Brady Briggs, Sr., a widower, who will be referred to in this opinion as the decedent.

At the time of his death in Detroit on December 11, 1961, and for more than fifteen years prior to that time, the decedent had been a resident of Michigan. He is survived by a son, Solon Brady Briggs, Jr. It appears from the record that the Probate Court of Wayne County, Michigan, entered an order declaring the decedent to have been a resident of that state; that he died intestate; and that his son is his sole heir at law and the distributee of his estate.

The letter which was held by the circuit court to be a holographic will was written by the decedent to his niece, Sarah Lucy Anderson Norington, and mailed to her at her home in Washington, D. C. Subject to the omission of five paragraphs dealing with personal matters, which em-

brace approximately one-half the length of the letter, it is as follows:

"635 E. Elizabeth
"Detroit 1, Michigan
"August 18, 1957.

\* \* \* \* \* \*

"We never know how long we are going to live. I will be 61 next month. Hence the end cannot be too far away. If you are the longer liver I would like for you to take my affairs in hand and see to it my wishes are *carried*. I will have a will drawn up and you will be named the sole executrix of my last will and testament. I have no debts and so what is left after funeral expenses and a contribution to Va. Union University not *exceed* One Thousand Dollars will be yours. To keep the other members of the family from breaking the will give each one just one dollar. Of course you will get my home if I have not *disposed* before that time.

"Please write me and let me know if you will serve as the sole executrix of my last will and testament. I do not want the others to know about this. I'll have a will drawn up. You keep this letter for use if anything should happen to me before the will is drawn up. Of course if I should marry again, this will change a part of the will. I want you to have my home. It's not likely I shall marry again.

"Please bear in mind you will get everything left after funeral expenses, donation to Union and one dollar to my folks, and your folks have been taken care of.

"Let me hear from you soon,

"Yours,

"BRADY."

Sarah Lucy Anderson Norington petitioned the County Court of Summers County to have the letter probated as a holographic will. The petition alleges that the estate consists of personal property in Michigan and real estate in Hinton, Summers County, West Virginia; and that a

special administrator of the estate was appointed in Michigan. Apparently the personal estate was fully and finally administered in accordance with the laws of Michigan. An answer to the petition was filed by Solon Brady Briggs, Jr. Testimony was taken at a subsequent hearing before the county court. The testimony adequately establishes the fact that the paper was wholly in the handwriting of the decedent. The county court entered an order by which it declined to admit the writing to probate as a valid will. Upon appeal by Sarah Lucy Anderson Norington, the Circuit Court of Summers County held that the writing was a valid holographic will and directed that the county court probate it as provided by law. From that order of the circuit court, the writ of error was granted by this Court upon the petition of Solon Brady Briggs, Jr.

It is generally held that the right to make a will, particularly in relation to real estate, does not exist at common law but is entirely dependent upon statutory enactment. *Goetz* v. *Old National Bank of Martinsburg,* 140 W. Va. 422, 428-429, 84 S. E. 2d 759, 765-766; *Weese* v. *Weese,* 134 W. Va. 233, 241-242, 58 S. E. 2d 801, 807; *Powell* v. *Sayres,* 134 W. Va. 653, 663, 60 S. E. 2d 740, 747; *Black* v. *Maxwell,* 131 W. Va. 247, 254-255, 46 S. E. 2d 804, 808; *Dower* v. *Seeds,* 28 W. Va. 113, 141; *McMechen* v. *McMechen,* 17 W. Va. 683, pt. 9 syl.; 57 Am. Jur., Wills, Section 3, page 41; 94 C.J.S., Wills, Section 2, page 679 and Section 3, page 680. Apparently counsel for the respective parties agree that holographic wills are not recognized under the laws of Michigan. See Compiled Laws of the State of Michigan (1948), Vol. IV, Chapter II, Section 702.5.

It appears inferentially from the record that an unsuccessful effort was made to have the writing probated in Michigan as a will. The general rule is that a determination of the validity or invalidity of a will by a court of the testator's domicile is not conclusive on that question in relation to real estate situated in another state, either upon principles of *res judicata* or the full faith and credit provision. This is true "because (1) the foreign court has no jurisdiction or power to pass upon the title to real

property not found within its territorial limits, and the constitutional provision presupposes a judgment or decree rendered by a court of competent jurisdiction; and (2) the decree of probate has no effect even in that state upon the title of real estate elsewhere, and the constitutional provision does not require the giving to foreign judgments greater effect than they have at home." Anno. 131 A.L.R. 1023, 1033. To the same effect, see 95 C.J.S., Wills, Section 580C, page 699; 57 Am. Jur., Wills, Section 957, page 626; *Thrasher v. Ballard,* 33 W. Va. 285, pt. 3 syl., 10 S. E. 411. For a recent case dealing with the binding effect of a judgment of a court of another state, see *Aldrich v. Aldrich,* 147 W. Va. 269, 127 S. E. 2d 385.

The general rule is that the validity of a will with respect to personalty is governed by the laws of the place of testator's last domicile; and, with respect to realty, by the laws of the place where the realty is situated, the place of the execution of the will being without legal significance or effect. 94 C.J.S., Wills, Section 150, page 934. See also *Thrasher v. Ballard,* 33 W. Va. 285, 288, 10 S. E. 411, 412; *Hornbrook v. Lutz,* 66 W. Va. 39, 66 S. E. 10; *Jones v. Hoard,* 108 W. Va. 308, 315-316, 151 S. E. 183, 186; *Capers v. White,* 195 Va. 1123, 81 S. E. 2d 597; *Seaton v. Seaton,* 184 Va. 180, 34 S. E. 2d 236; *Rinker v. Trout,* 171 Va. 327, 198 S. E. 913; Harrison on Wills and Administration for Virginia and West Virginia, (2d ed.), Vol. 1, Section 4, page 4, and Section 10 (1), page 9. "The law of the domicile of the testator determines the validity of a holographic will as to personalty and the law of the situs governs as to realty." 94 C.J.S., Wills, Section 201, page 1038. In relation to real estate owned by the decedent in Summers County, therefore, the validity or invalidity of the writing as a holographic will must be determined by the laws of this state.

By Code, 1931, 41-1-3, provision is made for wills "wholly in the handwriting of the testator." Consequently, holographic wills are recognized in this state. *Rice v. Henderson,* 140 W. Va. 284, 83 S. E. 2d 762; 20 M.J. Wills, Section 42, page 186. A holographic will may be in the form of a letter. *Langfitt v. Langfitt,* 108 W. Va. 466, 151 S. E.

715; Anno. 40 A.L.R. 2d 698. There must, however, be a concurrence of a testamentary intent and a writing in proper form. *Black* v. *Maxwell,* 131 W. Va. 247, 46 S. E. 2d 804. "The writing must have been designed by the maker as an actual disposition of property to take effect after his death, and not merely as an expression of what he expected to do or desired that others should do." *Rice* v. *Henderson,* 140 W. Va. 284, 291, 83 S. E. 2d 762, 767.

In relation to the signature to the will, the only requirement of the statute is that the writing be signed by the testator "in such manner as to make it manifest that the name is intended as a signature." *Black* v. *Maxwell,* 131 W. Va. 247, 255, 46 S. E. 2d 804, 809; *LaRue* v. *Lee,* 63 W. Va. 388, 60 S. E. 388. "A testator may sign his name by writing it out in full, or by abbreviating it, or by writing his initials only, and the first name of the testator may be by itself a sufficient signature to a will." 94 C.J.S., Wills, Section 171, pages 971-972. A mark intended as a signature may be sufficient. *Montgomery* v. *Montgomery,* 147 W. Va. 449, 128 S. E. 2d 480. A signature to a holographic will may be by the initials of the testator's name. *Pilcher* v. *Pilcher,* 117 Va. 356, 84 S. E. 667. The writing in this case, therefore, cannot be declared invalid as a will merely by reason of the fact that the signature embraces only the first name of the decedent.

The primary issue presented for decision involves the question of the presence or the absence of a testamentary intent. The fundamental rule that testamentary intent is essential to the validity of a will applies to holographic wills. *Rice* v. *Henderson,* 140 W. Va. 284, pt. 3 syl., 83 S. E. 2d 762; *Hunt* v. *Furman,* 132 W. Va. 706, 52 S. E. 2d 816; *Black* v. *Maxwell,* 131 W. Va. 247, 46 S. E. 2d 804; 94 C.J.S., Wills, Section 203, page 1038. In determining whether a writing in the form of a letter discloses an intent to make a posthumous disposition of the writer's property, it is proper to consider whether the language expresses merely an intent to make a will in the future, and whether the language relied upon as being testamentary in character constitutes the important or principal portion of the letter,

or whether such language is merely casual. Anno. 40 A.L.R. 2d 703, 709, and 714.

Where a will on its face appears to be in due form and in accordance with statutory requirements, the authorities are divided on the question whether parol or extrinsic evidence may be admitted on the question of the presence or the absence of testamentary intent. On the other hand, the authorities are practically unanimous to the effect that if a writing is not in the usual form of a will, and if on its face it is ambiguous on the question of the presence or absence of testamentary intent, extrinsic evidence, including statements of the alleged testator, is admissible on that question. *Rice v. Henderson,* 140 W. Va. 284, 83 S. E. 2d 762; 57 Am. Jur., Wills, Section 874, page 580, and Section 896, page 590; 95 C.J.S., Wills, Section 396, page 302, and Section 401, page 305; Anno. 21 A.L.R. 2d 321; Anno. 54 A.L.R. page 931; Harrison on Wills and Administration for Virginia and West Virginia (2d ed.), Vol. 1, Section 140 (4), page 200; Rollison on Wills, Section 92, page 159; Underhill on the Law of Wills, Section 39, page 47; Thompson on Wills (3d ed.), Section 333, page 497; Page on Wills, Vol. 1, Section 5.16, page 202.

We are of the opinion that the writing on its face fails to disclose testamentary intent. The references to a posthumous disposition of the decedent's property are casual in nature, and by no means the predominant aspect or portion of the letter. At least one-half the length of the letter is devoted to personal matters unrelated to a posthumous disposition of property. The writing on its face discloses an unfulfilled intention, an unconsummated purpose, subsequently to execute a will. The decedent stated in the letter: "I will have a will drawn up and you will be named the sole executrix of my last will and testament." These words bespeak futurity of intent and purpose rather than a present testamentary act. They do not disclose a present purpose to make a will or a present purpose to designate an executrix. On the contrary, the decedent in the letter inquires of his niece whether she will be willing to serve as executrix when the contemplated will is made. Again the letter states: *"I'll have a*

*will drawn up.* You keep this letter for use if anything should happen to me *before the will is drawn up."* (Italics supplied). The effect of this language is that the testator is stating that he has not made the contemplated will, that the letter is not a will, but that a request is made to the niece to "keep this letter for use if anything should happen to me before the will is drawn up." This language is conditional in nature; a statement by the decedent, in effect, that this letter is not a will, but that if he does not make the contemplated will, the niece is requested to keep the letter as evidence of his intent to have made a posthumous disposition of his property and as proper evidence of his unfulfilled purpose.

The decedent lived for approximately four years and four months after the letter was written. The record indicates that he made one or more efforts during that period to make the contemplated will, but he died without having done so.

While we are unanimously of the opinion that the absence of testamentary intent appears clearly from the face of the letter, even if it is assumed that the writing is ambiguous in respect to testamentary intent, subsequent letters written by the decedent to his niece tend to fortify the proposition that the original letter was not intended to be testamentary in character. On October 13, 1957, the decedent wrote a letter to his niece containing the following language: "However, I want you to keep the letter I wrote you about my will. I will have it drawn up just as soon as I can get around to it. Nobody knows about this matter between you and me." On April 14, 1960, the decedent wrote another letter to his niece containing the following statement: "I have yet to get the will made out. When I went home last year I wanted Mr. Eagle to make out the will, but I found out that he is no longer practicing law. He is past 80 now. I have spoken *to lawyer* here about it. I will see him again in a few days."

For reasons stated, the Court holds that the letter in question cannot be probated as a holographic will because of the absence of a testamentary intent.

By way of cross assignment of error, the brief of counsel for Sarah Lucy Anderson Norington asserts that the appellant failed to designate the portion of the record to be printed, pursuant to subsection 3 of Rule IV of the rules of this Court. Subsection 1 states that the rule "will be construed so as to require a minimum of expense to litigants in the printing of such parts of the record as may be necessary to determine the questions presented upon appeal." Subsection 7 (f) provides in part: "When, in the opinion of this court, unnecessary matter has been designated, it may withhold or divide costs as justice may require." The purpose of the rule is obvious, but we are unable to perceive that there was in this respect any omission or failure on the part of the appellant which was prejudicial to the appellee or which could defeat the appeal. In *Wyckoff* v. *Painter,* 145 W. Va. 310, 115 S. E. 2d 80, the Court held that upon a motion to reverse, the appeal is upon the original record, and that in such circumstances the requirements of Rule IV are not applicable. In the present situation, the case was submitted to the circuit court in lieu of a jury upon the original record made in the county court and the case was submitted to this Court on the same record.

By way of cross assignment of error, the appellee asserts further that the appellant failed to comply with Rule 52 and Rule 59 of the Rules of Civil Procedure for Trial Courts, in that the appellant failed to make a motion within ten days to set aside the judgment of the circuit court. We do not here decide whether the Rules of Civil Procedure apply in a case such as this on appeal to a circuit court from a county court. See R.C.P. 81, Lugar and Silverstein, W. Va. Rules, page 20 and page 530. However, even if the Rules were applicable to the proceedings in the circuit court in this case, R.C.P. 59 (f) could have no pertinent bearing because that rule applies only "after a trial by jury wherein a verdict is returned without direction thereof by the court." Lugar and Silverstein, W. Va. Rules, page 458.

For reasons stated, the judgment of the Circuit Court of Summers County is reversed and the case is remanded

to that court for such further action consistent with this opinion as may be proper.

*Reversed and remanded.*